[No. S167791. Nov. 15, 2010.]

ROBERT MARTINEZ et al., Plaintiffs and Appellants, v.
REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Defendants
and Respondents.

1278

## COUNSEL

Immigration Reform Law Institute, Kris W. Kobach; Ropers, Majeski, Kohn & Bentley and Michael J. Brady for Plaintiffs and Appellants.

Lawrence J. Joseph for Eagle Forum Education & Legal Defense Fund as Amicus Curiae on behalf of Plaintiffs and Appellants.

Daniel J. Popeo, Richard A. Stamp; Law Offices of Mark E. Foster and Mark E. Foster for U.S. Representative Lamar Smith, U.S. Representative Steve King, Washington Legal Foundation and Allied Educational Foundation as Amici Curiae on behalf of Plaintiffs and Appellants.

Sharon L. Browne and Ralph W. Kasarda for Pacific Legal Foundation as Amicus Curiae on behalf of Plaintiffs and Appellants.

Charles F. Robinson, Christopher M. Patti, Margaret L. Wu; Howard Rice Nemerovski Canady Falk & Rabkin, Robert D. Hallman; Folger Levin & Kahn, Crowell & Moring, Ethan P. Schulman and Trina D. McAlister for Defendants and Respondents The Regents of the University of California and Mark G. Yudof.

Christine Helwick and Andrea M. Gunn for Defendants and Respondents Board of Trustees of the California State University and Charles B. Reed.

Edmund G. Brown, Jr., Attorney General, David S. Chaney, Chief Assistant Attorney General, Gordon Burns, Deputy State Solicitor General, Douglas M. Press, Assistant Attorney General, and Julie Weng-Gutierrez, Deputy Attorney General, for Defendants and Respondents California Community Colleges and Chancellor Marshall Drummond.

Multicultural Education, Training and Advocacy (META) Inc., and Peter D. Roos for Californians Together, the Association of Mexican American Educators and the California Association for Bilingual Education as Amici Curiae on behalf of Defendants and Respondents.

Julie A. Su, Yungsuhn Park, Carmina Ocampo; Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, Paul S. Chan and Jennifer S. Chang for Asian Pacific American Legal Center and 80 Asian Pacific American organizations as Amici Curiae on behalf of Defendants and Respondents.

Camille A. Goulet, Kevin D. Jeter, Anne L. Diga and Eric C. Kim for Los Angeles Community College District as Amicus Curiae on behalf of Defendants and Respondents.

Garcia Calderón Ruíz, Mary T. Hernandez, Cecilia N. Brennan and Virginia Y. Calderón for San José/Evergreen Community College District as Amicus Curiae on behalf of Defendants and Respondents.

Vanessa Castillo, Carlos Amador, Jonathan Bibriesca, Yenni Diaz, Francisco Bravo and Lourdes Cruz for Orange County Dream Team as Amicus Curiae on behalf of Defendants and Respondents.

Munger, Tolles & Olson, Bradley S. Phillips, Fred A. Rowley, Jr., Mark R. Yohalem, Gabriel P. Sanchez, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, Robert Rubin; Mexican American Legal Defense and Educational Fund, Cynthia Valenzuela, Nicholas Espiritu and Kristina

Campbell for Alicia A., Gloria A., Marcos A., Mildred A., Enrique Boca, Nicole Doe, Collin Campbell, Alex Ortiz, Linda Lin Qian, Cesar Rivadeneyra, Jennifer Seidenberg, Improving Dreams, Equality, Access and Success at University of California, Davis, Improving Dreams, Equality, Access and Success of University of California, Los Angeles and National Immigration Law Center as Amici Curiae on behalf of Defendants and Respondents.

Stutz Artiano Shinoff & Holtz, Ray J. Artiano and Robert M. Mahlowitz for San Diego Community College District as Amicus Curiae on behalf of Defendants and Respondents.

Latinojustice PRLDEF, Jose Perez, Jackson Chin; Simpson Thacher & Bartlett, Alexis S. Coll-Very, George R. Morris and Deanne K. Cevasco for New York State Youth Leadership Council, New York State Association for Bilingual Education, New York Latino Research and Resources Network, New York Immigration Coalition, Long Island Immigrant Alliance, Northern Manhattan Coalition for Immigrant Rights, Hispanic Resource Center of Larchmont and Mamaroneck, Hispanic Federation, Committee for Hispanic Children & Families, Hispanic Association of Colleges and Universities, Hispanic College Fund, Hispanic National Bar Association, Asian American Legal Defense & Education, Professional Staff Congress, California Faculty Association, Dr. Pedro Caban, Dr. Marcelo Suarez-Orozco, Dr. Carola Suárez-Orozco, Dr. Regina Cortina, Catherine J. Crowley and Dr. Kevin Dougherty as Amici Curiae on behalf of Defendants and Respondents.

Lee Gelernt, Lucas Guttentag and Linton Joaquin for American Civil Liberties Union, American Civil Liberties Union of Northern California, American Civil Liberties Union of Southern California, American Civil Liberties Union of San Diego and Imperial Counties and the National Immigration Law Center as Amici Curiae on behalf of Defendants and Respondents.

Thuy Thi Nguyen; School and College Legal Services of California, Virginia A. Riegel and Patrick C. Wilson for Peralta Community College District as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

CHIN, J.—This case involves a controversial subject: persons unlawfully present in this country. The California Legislature has provided that unlawful aliens are exempt from paying nonresident tuition at California state colleges and universities under certain circumstances. (Ed. Code, § 68130.5 (section 68130.5).) Congress has prohibited the states from making unlawful aliens eligible for postsecondary education benefits under certain circumstances.

(8 U.S.C. § 1623 (section 1623).) Plaintiffs challenge section 68130.5's validity, largely on the basis that it violates section 1623. Defendants argue section 68130.5 complies with federal law.

This court has received many briefs making policy arguments for and against section 68130.5's tuition exemption. We have received arguments that section 68130.5 affords deserving students educational opportunities that would not otherwise be available and, conversely, arguments that it flouts the will of Congress, wastes taxpayers' money, and encourages illegal immigration. But this court does not make policy. Whether Congress's prohibition or the Legislature's exemption is good policy is not for us to say. Rather, we must decide the legal question of whether California's exemption violates Congress's prohibition or is otherwise invalid. We must decide the statutory question by employing settled methods of statutory construction.

The main legal issue is this: Section 1623 (8 U.S.C.) provides that an alien not lawfully present in this country shall not be eligible *on the basis of residence within a state* for any postsecondary education benefit unless a citizen or national of this country is eligible for that benefit. In general, nonresidents of California who attend the state's colleges and universities must pay nonresident tuition. (Ed. Code, § 68050.) But section 68130.5, subdivision (a), exempts from this requirement students—including those not lawfully in this country—who meet certain requirements, primarily that they have attended high school in California for at least three years. The question is whether this exemption is based on residence within California in violation of section 1623.

■ Because the exemption is given to all who have attended high school in California for at least three years (and meet the other requirements), and not all who have done so qualify as California residents for purposes of in-state tuition, and further because not all unlawful aliens who would qualify as residents but for their unlawful status are eligible for the exemption, we conclude the exemption is not based on residence in California. Rather, it is based on other criteria. Accordingly, section 68130.5 does not violate section 1623.

We also conclude plaintiffs' remaining challenges to section 68130.5 lack merit. Specifically, section 68130.5 does not violate another federal statute (8 U.S.C. § 1621 (section 1621)), is not impliedly preempted by federal law, and does not violate the privileges and immunities clause of the Fourteenth Amendment to the United States Constitution. We reverse the judgment of the Court of Appeal, which had found section 68130.5 invalid on each of these grounds.

## I. Procedural Background

Plaintiffs allege that they are United States citizens who are or were students paying nonresident tuition at a California public university or college, and that they have been "illegally denied exemption from nonresident tuition under California Education Code section 68130.5." They have filed this lawsuit against the Regents of the University of California (Regents) and others, including officials representing the California State University system and the California Community Colleges. The complaint also alleges that "[p]laintiffs intend to and hereby maintain the claims reflected herein as a class action. The plaintiff class consists of thousands of former and current nonresident U.S. citizens too numerous to be practically joined."

The complaint states 10 causes of action. The first eight causes of action allege, in order, that section 68130.5 violates the following legal provisions: (1) section 1623; (2) section 1621; (3) 42 United States Code section 1983; (4) the equal protection clause of the United States Constitution; (5) the privileges and immunities clause of the Fourteenth Amendment to the United States Constitution; (6) "field preemption"; (7) the equal protection clause of the California Constitution; and (8) the Unruh Civil Rights Act (Civ. Code, § 51 et seq.). The ninth and 10th causes of action are for injunctive relief and declaratory relief, respectively. Plaintiffs seek a determination that section 68130.5 is invalid on each alleged ground, reimbursement of nonresident tuition fees, damages, and attorney fees.

Defendants demurred to the complaint. The trial court sustained the demurrer without leave to amend and dismissed the action. Plaintiffs appealed.

The Court of Appeal reversed the judgment. It held that plaintiffs had forfeited the claim that they have a private right of action to enforce section 1621 or section 1623 by failing to address the matter in their opening brief, and that they failed to show reversible error in the trial court's denial of certain judicial notice requests. It rejected plaintiffs' arguments that section 68130.5 conflicted with other California statutory provisions, and that it violated the due process clauses of the California and United States Constitutions, the Unruh Civil Rights Act, and article I, section 31 of the California Constitution. But the Court of Appeal also held that section 68130.5 is expressly preempted by both sections 1621 and 1623 (8 U.S.C.), that section 68130.5 is also impliedly preempted, that plaintiffs should be allowed leave to amend the complaint regarding their equal protection claim, and that the complaint stated a viable claim that section 68130.5 violates the privileges and immunities clause of the Fourteenth Amendment to the United States Constitution.

Plaintiffs, the Regents, and the California Community Colleges all petitioned for review. We denied plaintiffs' petition and granted the Regents' and the California Community Colleges' petitions. The Regents' petition presents the issues of whether section 1621 or section 1623 preempts section 68130.5, and whether section 68130.5 violates the privileges and immunities clause of the Fourteenth Amendment to the United States Constitution. The California Community Colleges' petition presents the issue of whether "federal immigration laws preempt California's policy of granting in-state tuition to nonresident high school graduates."

## II. Discussion

### A. *Introduction*

"Each student shall be classified as a resident or nonresident at the University of California, the California State University, or the California Maritime Academy or at a California community college." (Ed. Code, § 68040.) "A student classified as a nonresident shall be required, except as otherwise provided in this part, to pay, in addition to other fees required by the institution, nonresident tuition." (Ed. Code, § 68050.) Thus, nonresidents must generally pay nonresident tuition at public universities and colleges in California. The issue of this case revolves around when, if ever, California may exempt aliens not lawfully present in this country from having to pay nonresident tuition.

In 2001, effective January 1, 2002, the Legislature added section 68130.5 to the Education Code. (Stats. 2001, ch. 814, § 2.) It provides:

"Notwithstanding any other provision of law:

"(a) A student, other than a nonimmigrant alien within the meaning of paragraph (15) of subsection (a) of Section 1101 of Title 8 of the United States Code, who meets all of the following requirements shall be exempt from paying nonresident tuition at the California State University and the California Community Colleges:

"(1) High school attendance in California for three or more years.

"(2) Graduation from a California high school or attainment of the equivalent thereof.

"(3) Registration as an entering student at, or current enrollment at, an accredited institution of higher education in California not earlier than the fall semester or quarter of the 2001–02 academic year.

"(4) In the case of a person without lawful immigration status, the filing of an affidavit with the institution of higher education stating that the student has filed an application to legalize his or her immigration status, or will file an application as soon as he or she is eligible to do so.

"(b) A student exempt from nonresident tuition under this section may be reported by a community college district as a full-time equivalent student for apportionment purposes.

"(c) The Board of Governors of the California Community Colleges and the Trustees of the California State University shall prescribe rules and regulations for the implementation of this section.

"(d) Student information obtained in the implementation of this section is confidential."[1]

▇ Plaintiffs contend this statute is invalid on various grounds. Their main argument is that federal immigration law preempts it. "The supremacy clause of the United States Constitution establishes a constitutional choice-of-law rule, makes federal law paramount, and vests Congress with the power to preempt state law." (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 935 [63 Cal.Rptr.3d 50, 162 P.3d 569].) "The '[p]ower to regulate immigration is unquestionably exclusively a federal power.' " (*In re Jose C.* (2009) 45 Cal.4th 534, 550 [87 Cal.Rptr.3d 674, 198 P.3d 1087], quoting *De Canas v. Bica* (1976) 424 U.S. 351, 354 [7 L.Ed.2d 43, 96 S.Ct. 933].) "While the immigration power is exclusive, it does not follow that any and all state regulations touching on aliens are preempted. (*De Canas v. Bica, supra,* at p. 355.) Only if the state statute is in fact a 'regulation of immigration,' i.e., 'a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain' (*ibid.*), is preemption structural and automatic. Otherwise, the usual rules of statutory preemption analysis apply; state law will be displaced only when affirmative congressional action compels the conclusion it must be. (*Id.* at pp. 356–357.)" (*In re Jose C., supra,* at p. 550.) Because section 68130.5 does not "regulate[] who may enter or remain in the United States, we proceed under the usual preemption rules." (*In re Jose C., supra,* at p. 550.)

---

[1] By its terms, section 68130.5 applies only to the California State University and California Community Colleges, and not to the University of California. Education Code section 68134 provides: "No provision of this part shall be applicable to the University of California unless the Regents of the University of California, by resolution, make such provision applicable." The parties agree that the Regents have, by resolution, made section 68130.5 applicable. (Regents of U.C., Standing Order 110.2.)

"We have identified four ways in which Congress may preempt state law: express, conflict, obstacle, and field preemption." (*In re Jose C., supra,* 45 Cal.4th at p. 550.) Plaintiffs' main preemption argument is that two federal statutes—sections 1621 and 1623—expressly preempt section 68130.5. Because the argument concerning section 1623 is the stronger of the two, we will consider that one first and then the section 1621 argument. Then we will consider plaintiffs' remaining arguments.

The parties disagree as to whether a presumption against preemption exists. The point is unclear. In the past, the high court has indicated that a general presumption against preemption applies even in the context of immigration law. (See *In re Jose C., supra,* 45 Cal.4th at p. 551, citing *De Canas v. Bica, supra,* 424 U.S. at p. 356.) However, more recent high court authority suggests that no particular presumption applies. (See *Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc., supra,* 41 Cal.4th at p. 939, and cases cited.) We need not resolve the question here because, as we explain, we find no preemption even without a presumption.

Before we turn to the issues, we must comment on terminology. Defendants and supporting amici curiae generally refer to a person not lawfully in this country by a term such as "undocumented immigrant." Plaintiffs and supporting amici curiae generally use the term "illegal alien," as did the Court of Appeal. The term "undocumented immigrant" is vague and is not used in the relevant statutes. It is also euphemistic, because it is unlawful to be in this country and to be undocumented in the sense in which defendants use the term. On the other hand, some view the term "illegal alien" as pejorative. Wishing to be as neutral, yet as accurate, as possible in our terminology, we turn to the most relevant statutes for assistance. Section 68130.5, subdivision (a)(4), uses the phrase "a person without lawful immigration status." The federal provisions, sections 1621(d) and 1623(a), use the phrase "an alien who is not lawfully present in the United States." Both of these phrases are too bulky to be used continually. We believe it best to shorten these phrases to the two-word term "unlawful alien." Accordingly, we will use that term in this opinion.

B. *Title 8 United States Code section 1623*

Section 1623(a) provides: "Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." The section applies "to benefits provided on or after July 1, 1998."

(§ 1623(b).) Section 1623 was enacted on September 30, 1996, as part of the omnibus Illegal Immigration Reform and Immigrant Responsibility Act of 1996. (Pub.L. No. 104-208, div. C, § 505 (Sept. 30, 1996) 110 Stat. 3009-672; see *INS v. St. Cyr* (2001) 533 U.S. 289, 292 [150 L.Ed.2d 347, 121 S.Ct. 2271].)

Plaintiffs contend that section 68130.5 violates this statute, i.e., that section 68130.5 makes an unlawful alien eligible for a benefit (in-state tuition) on the basis of residence without making a citizen eligible for the same benefit. When it enacted section 68130.5, the Legislature was aware of section 1623. Indeed, Governor Gray Davis had vetoed an earlier version of what eventually became section 68130.5 because he believed section 1623 would require that the same exemption from nonresident tuition be given to all out-of-state legal United States residents. (Governor's veto message to Assem. on Assem. Bill No. 1197 (1999–2000 Reg. Sess.) (Sept. 29, 2000).) During the legislative process leading to section 68130.5's enactment, the Legislative Counsel issued an opinion concluding that the provision would not conflict with section 1623. (Ops. Cal. Legis. Counsel, No. 15729 (June 22, 2001) p. 1.) Ultimately, in an uncodified section of the bill enacting section 68130.5, the Legislature found that "[t]his act, as enacted during the 2001–02 Regular Session, does not confer postsecondary education benefits on the basis of residence within the meaning of Section 1623 of Title 8 of the United States Code." (Stats. 2001, ch. 814, § 1, subd. (a)(5).)

■ Defendants argue preliminarily that we should give deference to both the Legislative Counsel's opinion and the legislative finding. We disagree. It is true that normally we give legislative findings great weight (*Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543, 569 [63 Cal.Rptr.2d 467, 936 P.2d 473]), and "[o]pinions of the Legislative Counsel, though not binding, are entitled to great weight when courts attempt to discern legislative intent" (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 939 [38 Cal.Rptr.3d 220, 126 P.3d 1040]). But this legislative finding is one of law, not of fact, and we are not attempting to discern legislative *intent* but are deciding whether the statute is valid. The relevant legislative intent behind section 68130.5 is clear. The Legislature intended the statute to be valid. But whether a statute *is* valid is a legal determination for the courts, not the Legislature, to make. In deciding whether a federal statute expressly preempts a state statute, it is *Congress's* purpose that matters, not the state Legislature's. (*Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470, 484–485 [135 L.Ed.2d 700, 116 S.Ct. 2240].) Accordingly, we will consider the legislative finding and the Legislative Counsel's opinion—as well as the Governor's veto message regarding the predecessor bill—for their persuasive value, but we owe them no deference. In fact, we

see nothing in any of these sources that adds substantially to the parties' thorough briefs, and we do not discuss them separately from the arguments in the briefs.

■ In deciding whether section 1623 preempts section 68130.5, we consider primarily section 1623's language. "Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." (*Medtronic, Inc. v. Lohr, supra*, 518 U.S. at p. 486.) In determining legislative intent, "[w]e first examine the statutory language, giving it a plain and commonsense meaning." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) Section 1623's language compels us to conclude that it does not prohibit what the Legislature did in enacting section 68130.5.

■ Section 1623(a) prohibits a state from making unlawful aliens eligible "on the basis of residence within a State" for a postsecondary education benefit. ■ The fatal flaw in plaintiffs' argument concerning section 1623 is their contention that section 68130.5's exemption from paying out-of-state tuition is based on residence. It is not. It is based on *other* criteria, specifically, that persons possess a California high school degree or equivalent; that if they are unlawful aliens, they file an affidavit stating that they will try to legalize their immigration status; and, especially important here, that they have attended "[h]igh school . . . in California for three or more years." (§ 68130.5, subd. (a)(1), (2) & (4).) ■ Indeed, both before and after section 68130.5's enactment, the law has been that unlawful aliens cannot be deemed California residents for purposes of paying resident tuition. (Ed. Code, § 68062; *Regents of University of California v. Superior Court* (1990) 225 Cal.App.3d 972, 980 [276 Cal.Rptr. 197].) Moreover, many unlawful aliens who would qualify as California residents but for their unlawful status, and thus would not have to pay out-of-state tuition, will not be eligible for section 68130.5's exemption—only those who attended high school in California for at least three years and meet the other requirements are eligible for the exemption.

■ The section 68130.5 exemption cannot be deemed to be based on residence for the simple reason that many *nonresidents* may qualify for it. Every nonresident who meets section 68130.5's requirements—whether a United States citizen, a lawful alien, or an unlawful alien—is entitled to the nonresident tuition exemption. Attending high school in California for at least three years and meeting the other requirements are not the functional equivalent of residing in California. Some American citizens who are not residents of California may also be eligible for the exemption.

Defendants point out three ways that students could have attended high school in California for at least three years and otherwise qualified for the exemption yet not be California residents. First, some students who live in an adjoining state or country are permitted to attend high school in California in some circumstances, even though they are not California residents. (Ed. Code, §§ 48050, 48051.) Second, the children of parents who live outside of California but who attend boarding schools in California might attend California high schools for three years, yet not be California residents. Third, those who attended high school in California for three years but then moved out of the state and lost their residency status would apparently be eligible for the exemption if they decided to attend a public college or university in California. Indeed, the Regents inform us that a majority of University of California students receiving the nonresident tuition exemption are in this country lawfully.

If Congress had intended to prohibit states entirely from making unlawful aliens eligible for in-state tuition, it could easily have done so. It could simply have provided, for example, that "an alien who is not lawfully present in the United States shall not be eligible" for a postsecondary education benefit. But it did not do so; instead, it provided that "an alien who is not lawfully present in the United States shall not be eligible *on the basis of residence within a State*" for a postsecondary education benefit. (§ 1623(a), italics added.) The reference to the benefit being on the basis of residence must have some meaning. It can only qualify, and thus limit, the prohibition's reach. Section 1623 does not govern this case.

Finding to the contrary, the Court of Appeal stated: "The wording of the California statute, requiring attendance at a California high school for three or more years, creates a de facto residence requirement. Or, as plaintiffs put it, if section 68130.5 requires an illegal alien to attend a California high school for three years in order to qualify for the exemption from nonresident tuition, then the state has effectively established a surrogate criterion for residence." We disagree. A residency requirement and the criteria stated in section 68130.5 share certain similarities, and those who satisfy section 68130.5 will often also be residents of California. But, as we have explained, section 68130.5's criteria are not the same as residence, nor are they a de facto or surrogate residency requirement. Congress specifically referred to *residence*—not some form of surrogate for residence—as the prohibited basis for granting unlawful aliens a postsecondary education benefit.

In determining Congress's intent, courts may also consider "the 'structure and purpose of the statute as a whole.'" (*Medtronic, Inc. v. Lohr, supra*, 518 U.S. at p. 486.) Plaintiffs cite Congress's overall purpose in its immigration legislation in support of their expansive view of section 1623.

Congress has provided statements of national policy concerning immigration. It stated that "[i]t continues to be the immigration policy of the United States that—[¶] . . . [¶] (B) the availability of public benefits not constitute an incentive for immigration to the United States" (8 U.S.C § 1601(2)(B)), and that "[i]t is a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits" (8 U.S.C § 1601(6)). This general immigration policy would have supported an absolute ban on unlawful aliens' receiving the exemption. But section 1623 does not impose an absolute ban. The general policy in section 1601 cannot change section 1623's plain language or Congress's specific charge in this regard. (See also § 1621 [not making absolute the ban against unlawful aliens receiving public benefits], discussed in pt. II.C., *post*.)

 Plaintiffs also cite legislative history. When statutory language is ambiguous, this court and the United States Supreme Court sometimes turn to legislative history, including committee reports, to ascertain legislative or congressional intent. (*Eldred v. Ashcroft* (2003) 537 U.S. 186, 209, fn. 16 [154 L.Ed.2d 683, 123 S.Ct. 769]; *Coalition of Concerned Communities, Inc. v. City of Los Angeles, supra*, 34 Cal.4th at p. 737.) A House conference committee report, commenting on the language that was ultimately enacted as section 1623, states: "This section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." (H.R.Rep. No. 104-828, 2d Sess., p. 240 (1996) [joint explanatory statement of conference com. on revisions to H.R. No. 2202, 104th Cong.].)[2]

Defendants argue that this report does not apply to section 1623 because it concerned a related bill that was never enacted (H.R. No. 2202, 104th Cong.) rather than the omnibus immigration bill that was enacted and that included section 1623. We disagree. The language the conference committee report considered was identical to section 1623's language. (Compare H.R. No. 2202, 104th Cong., § 507, as added by House conf. com. in H.R.Rep. No. 104-828, 2d Sess., p. 134, with Pub.L. No. 104-208, § 505, 110 Stat. 3009-672, which became § 1623.) The high court has considered legislative history concerning a bill that was not enacted when the relevant language was identical to the language of the statute actually enacted. (*Begier v. IRS* (1990) 496 U.S. 53, 66 & fn. 6 [110 L.Ed.2d 46, 110 S.Ct. 2258]; see also *INS v. St. Cyr, supra*, 533 U.S. at p. 318 [considering the same conference committee report].)

---

[2] The conference committee report considered Senate amendments made in May of 1996 to House Bill No. 2202 (104th Cong., 1st Sess. (1995)), then proposed revisions to that bill. As amended, House Bill No. 2202 contained the language that was ultimately enacted as section 1623. (See H.R.Rep. No. 104-828, 2d Sess., § 507, p. 134 (1996).) However, the bill, while reported out of conference, was not enacted. Instead, section 1623 was enacted as part of a subsequent omnibus bill. (Pub.L. No. 104-208, § 505(a) (Sept. 30, 1996) 110 Stat. 3009, 3009-672.)

■ But, for a different reason, we believe the conference committee report does not reliably show that Congress intended to prohibit states entirely from exempting unlawful aliens from paying nonresident tuition. The report's general summary oversimplifies more nuanced statutory language. The high court has cautioned that "[e]xtrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms," and that "judicial reliance on legislative materials like committee reports . . . may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text." (*Exxon Mobil Corp. v. Allapattah Services, Inc.* (2005) 545 U.S. 546, 568 [162 L.Ed.2d 502, 125 S.Ct. 2611].) The statement in the committee report plaintiffs cite may, *in general*, be correct to a large extent, but it cannot change the circumstance that the actual statutory prohibition is not absolute, but qualified. Some legislators might have supported section 1623's plain language qualifying the prohibition but not have supported the committee report's seemingly absolute language. Section 1623's actual language prevails, not the committee's report.

■ Plaintiffs also cite statements of individual legislators that are similar to the statement in the conference committee report on which they rely. But the views of individual legislators carry little weight in interpreting the intent of the legislative body as a whole. (See *People v. Johnson* (2002) 28 Cal.4th 240, 247 [121 Cal.Rptr.2d 197, 47 P.3d 1064].) As the high court explained in response to a similar argument regarding a different statute: "Floor statements from two Senators cannot amend the clear and unambiguous language of a statute. We see no reason to give greater weight to the views of two Senators than to the collective votes of both Houses, which are memorialized in the unambiguous statutory text." (*Barnhart v. Sigmon Coal Co.* (2002) 534 U.S. 438, 457 [151 L.Ed.2d 908, 122 S.Ct. 941].)

Plaintiffs also argue that the history behind section 68130.5's enactment shows that the Legislature sought to avoid section 1623's prohibition. It does show that. Indeed, plaintiffs may be right that the Legislature's primary motivation in enacting section 68130.5 was to give unlawful aliens who live in California the benefit of resident tuition in a way that does not violate section 1623. The uncodified portion of the law that became section 68130.5 suggests this motivation. The Legislature found and declared that "[t]here are high school pupils who have attended elementary and secondary schools in this state for most of their lives and who are likely to remain, but are precluded from obtaining an affordable college education because they are required to pay nonresident tuition rates"; and that "[t]hese pupils have already proven their academic eligibility and merit by being accepted into our state's colleges and universities." (Stats. 2001, ch. 814, § 1, subd. (a)(1), (2).)

This description seems to apply primarily to unlawful aliens. Contrary to plaintiffs' suggestion, however, nothing is legally wrong with the Legislature's attempt to avoid section 1623. As we have explained, whether the Legislature *succeeded* in this attempt is for the courts to decide, but the mere desire to avoid the restrictions provides no basis to overturn the legislation.

Section 68130.5 does not violate section 1623.

## C. *Title 8 United States Code section 1621*

Plaintiffs argue, and the Court of Appeal found, that section 68130.5 also violates another express federal preemption provision: section 1621. Section 1621 was enacted in August 1996, shortly before section 1623, as part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRA). (Pub.L. No. 104-193, § 411 (Aug. 22, 1996) 110 Stat. 2105; see *League of United Latin American Citizens v. Wilson* (C.D.Cal. 1997) 997 F.Supp. 1244, 1249, 1251, 1253.) We conclude that section 68130.5 does not violate section 1621.

 As relevant here, section 1621 has two parts: (1) a general rule that unlawful aliens are not eligible for state or local public benefits (§ 1621(a)); and (2) a description of the circumstances under which a state *may* make an unlawful alien eligible for those public benefits (§ 1621(d)).[3]

Section 1621(a) provides:

"Notwithstanding any other provision of law and except as provided in subsections (b) and (d) of this section, an alien who is not—

"(1) a qualified alien (as defined in section 1641 of this title),

"(2) a nonimmigrant under the Immigration and Nationality Act [8 U.S.C. § 1101 et seq.], or

"(3) an alien who is paroled into the United States under section 212(d)(5) of such Act [8 U.S.C. § 1182(d)(5)] for less than one year, is not eligible for any State or local public benefit (as defined in subsection (c) of this section)."

Section 1621(d) provides: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible under subsection

---

[3] Section 1621(b) provides exceptions to the general rule that are not relevant here. Section 1621(c) defines " '[s]tate or local public benefit.' "

(a) of this section only through the enactment of a State law after August 22, 1996, which *affirmatively provides for such eligibility*." (Italics added.)

Section 68130.5 was enacted in 2002, well after August 22, 1996. Subdivision (a)(4) of that section expressly refers to "the case of a person without lawful immigration status." Moreover, the uncodified portion of the law that became section 68130.5 provides: "(a) The Legislature hereby finds and declares all of the following: [¶] . . . [¶] (4) This act . . . allows all persons, *including undocumented immigrant students* who meet the requirements set forth in Section 68130.5 of the Education Code, *to be exempt from nonresident tuition* in California's colleges and universities." (Stats. 2001, ch. 814, § 1, italics added.) When the same law was amended a year later, the Legislature reiterated this language. (Stats. 2002, ch. 19, § 1, subd. (a)(4).) Thus, it at least *appears* the Legislature affirmatively provided that qualifying unlawful aliens are eligible for the nonresident tuition exemption. But the Court of Appeal found (and plaintiffs argue) that, for two reasons, section 68130.5 does not satisfy section 1621's "affirmatively provides" requirement.

First, the Court of Appeal held that, to comply with section 1621, "not only must the state law specify that illegal aliens are eligible, but the state Legislature must also expressly reference title 8 U.S.C. section 1621 (which was not done in the case of § 68130.5)." We disagree. "This argument encounters a formidable obstacle: It lacks grounding in the text of [the statute]." (*Kimbrough v. United States* (2007) 552 U.S. 85, 102 [169 L.Ed.2d 481, 128 S.Ct. 558].) Section 1621's text contains no requirement that a state law giving unlawful aliens a benefit must expressly reference the section. As the sole support for its conclusion, the Court of Appeal cited a conference committee report on the bill that enacted section 1621, which states: "Only the affirmative enactment of a law by a State legislature and signed by the Governor after the date of enactment of this Act, *that references this provision*, will meet the requirements of this section." (H.R.Rep. No. 104-725, 2d Sess., p. 383 (1996), italics added.) However, for the reasons we explained in part II.B., *ante*, in finding unpersuasive a committee report regarding section 1623, such a report cannot change plain statutory language. (See *Exxon Mobil Corp. v. Allapattah Services, Inc., supra*, 545 U.S. at p. 568.)

Both this court and the high court have cautioned against reading into a statute language it does not contain or elements that do not appear on its face. (*Dean v. United States* (2009) 556 U.S. ___, ___ [173 L.Ed.2d 785, 129 S.Ct. 1849, 1853]; *Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 [85 Cal.Rptr.3d 466, 195 P.3d 1049].) This caution is especially pertinent when the legislative body has shown it knows how to add the element in express terms when it wishes to do so. (*Kimbrough v. United States, supra*,

552 U.S. at p. 103; *Vasquez v. State of California, supra*, at p. 252.) Congress has shown it knows how to require a state specifically to reference a federal law when it wishes to do so, because it has done just that numerous times. (E.g., 12 U.S.C. § 2279aa-12(b)(2) ["The provisions of paragraph (1) shall not be applicable to any State that . . . enacts a law that—[¶] (A) *specifically refers to this subsection*; and [¶] (B) expressly provides that paragraph (1) shall not apply to the State" (italics added)]; 15 U.S.C. § 80a-3a(c) ["Notwithstanding subsections (a) and (b) of this section . . . a State may enact a statute that *specifically refers to this section* and provides prospectively that this section shall not preempt the laws of that State referred to in this section." (italics added)].)

The general rule that a court should not add an element not appearing on the face of a statute has particular force here. The Legislature could easily have referenced section 1621 in section 68130.5, and no doubt it would have done so if section 1621 had so required. It is unreasonable to conclude that Congress intended to require the states to comply with section 1621's express requirements *and* to scour committee reports for other possible requirements not visible in the statutory language. The committee report may not create a requirement not found in section 1621 itself.

 Second, the Court of Appeal also concluded section 68130.5 did not provide that qualifying unlawful aliens are eligible for nonresident tuition clearly enough to satisfy the "affirmatively provides" requirement. "Although section 68130.5 does indicate that illegal aliens are eligible," the Court of Appeal said, "it does so in a convoluted manner." The Court of Appeal stated that "while we do not hold that [section 1621] requires the state statute to use the words 'illegal aliens,' we conclude the language of section 68130.5 does not clearly put the public on notice that tax dollars are being used to benefit illegal aliens." Plaintiffs go further and argue that, to satisfy section 1621, a state "would have to use the federal statutory term 'illegal alien' in its legislation—a term that would clearly put the public on notice." We disagree. Section 1621 requires no specific words, and certainly not the specific words "illegal alien," which not even section 1621 uses. We agree with the Regents' argument that "in order to comply, the state statute must expressly state that it applies to undocumented aliens, rather than conferring a benefit generally without specifying that its beneficiaries may include undocumented aliens." Section 68130.5 does so state. If Congress had intended to require more, we believe it would have said so clearly and would not have set a trap for unwary legislatures. Section 68130.5 satisfies section 1621.

D. *Implied preemption*

The Court of Appeal also found that section 68130.5 "falls within the principle of implied preemption in that it stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." Echoing this conclusion, plaintiffs argue that section 68130.5 is impliedly preempted through both field preemption and conflict preemption. Congress's intent to preempt "may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law." (*Altria Group, Inc. v. Good* (2008) 555 U.S. 70, 76 [172 L.E.d.2d 398, 129 S.Ct. 538, 543]; see also *In re Jose C., supra,* 45 Cal.4th at p. 551.) This presents a question of congressional purpose. (*Altria Group, Inc. v. Good, supra,* at p. 77 [129 S.Ct. at p. 543].) We find no implied preemption.

Critical to the implied preemption analysis is the existence of two express preemption statutes, namely sections 1621 and 1623. "In *Freightliner Corp. v. Myrick* (1995) 514 U.S. 280 [131 L.Ed.2d 385, 115 S.Ct. 1483], the court clarified the relation between express preemption clauses and implied preemption doctrines, explaining that 'an express definition of the preemptive reach of a statute "implies"—*i.e.,* supports a reasonable inference—that Congress did not intend to pre-empt other matters,' but the express clause does not 'entirely foreclose[] any possibility of implied pre-emption.' [Citations.] This inference is a simple corollary of ordinary statutory interpretation principles and in particular 'a variant of the familiar principle of *expressio unius est exclusio alterius*: Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.' [Citation.]" (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc., supra,* 41 Cal.4th at pp. 944–945.)

In this case, Congress did not merely imply that matters beyond the preemptive reach of the statutes are not preempted; it said so expressly. Section 1621(c) says that a state "may" provide public benefits for unlawful aliens if it does so in compliance with the statute's requirements. This language shows Congress did not intend to occupy the field fully. (See *Jevne v. Superior Court* (2005) 35 Cal.4th 935, 950 [28 Cal.Rptr.3d 685, 111 P.3d 954] [when federal law contains two savings clauses preserving state law in certain areas, "neither express preemption nor field preemption . . . is at issue"].) Because section 68130.5 complies with the conditions set out in both section 1621 and section 1623, those statutes cannot impliedly preempt it.

Plaintiffs and the Court of Appeal rely substantially on *League of United Latin American Citizens v. Wilson, supra,* 997 F.Supp. 1244, which held that federal law preempted the restrictions that Proposition 187, a voter initiative enacted in 1994, had placed on unlawful aliens. *Wilson,* however, is irrelevant to the issue here. Relying heavily on section 1621 (and not citing § 1623), it does, indeed, conclude that California "is powerless to enact its own legislative scheme to regulate alien access to public benefits." (*Wilson, supra,* at

p. 1261.) But it adds that California "can do what the PRA permits, and nothing more." (*Ibid.*) Section 1621 is part of the PRA. So the *Wilson* opinion just brings us back to the question of what section 1621 permits. As relevant here, *Wilson* is silent on that question.

In short, Congress did not impliedly prohibit what it expressly permitted. Section 68130.5 is not impliedly preempted.

E. *Privileges and immunities clause of the Fourteenth Amendment to the United States Constitution*

The Court of Appeal also found that plaintiffs have stated a viable claim that section 68130.5 violates the privileges and immunities clause of section 1 of the Fourteenth Amendment to the United States Constitution (hereafter, privileges and immunities clause or, sometimes, simply the clause). That clause provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ." Section 5 of the Fourteenth Amendment gives Congress the "power to enforce, by appropriate legislation, the provisions of this article."[4]

The Court of Appeal explained that "[p]laintiffs' theory, as alleged in the complaint, was that, 'By making illegal aliens who possess no lawful domicile in the state of California eligible for in-state tuition rates, while denying this benefit to U.S. citizens whose lawful domicile is outside California, the state of California has denigrated U.S. citizenship and placed U.S. citizen Plaintiffs in a legally disfavored position compared to that of illegal aliens.' " It agreed with plaintiffs that section 1623 was an exercise of Congress's power to enforce the Fourteenth Amendment's provisions. It concluded, accordingly, that violating section 1623 also violated the privileges and immunities clause. We disagree. Section 1623 was not violated.

In contrast to the Court of Appeal's opinion, which seems only to declare that in violating section 1623 the state also violated the privileges and immunities clause, plaintiffs' privileges and immunities clause argument is quite broad. Plaintiffs argue that the clause guarantees the citizen's privilege "of being treated no worse than an illegal alien in the distribution of public benefits." They seem to argue that *any* state action that gives a public benefit to unlawful aliens within the state's borders, even one complying with section 1621, violates the clause unless the state gives the same public benefit to all

---

[4] Plaintiffs do not rely on the privileges and immunities clause of article IV, section 2, clause 1 of the United States Constitution, which provides, "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." (See *Supreme Court of New Hampshire v. Piper* (1985) 470 U.S. 274 [84 L.Ed.2d 205, 105 S.Ct. 1272]; *Baldwin v. Montana Fish and Game Comm'n* (1978) 436 U.S. 371 [56 L.Ed.2d 354, 98 S.Ct. 1852].)

American citizens. They cite no authority that supports this proposition. Indeed, they cite no case interpreting the clause that compares treatment of unlawful aliens living within a state's borders to treatment of citizens who do not reside in that state. The high court has rarely invoked the clause to strike down a state statute (see *Saenz v. Roe* (1999) 526 U.S. 489, 511 [143 L.Ed.2d 689, 119 S.Ct. 1518] (dis. opn. of Rehnquist, C. J.)), and it has never said anything remotely supporting plaintiffs' broad interpretation. Indeed, the court has interpreted the clause quite narrowly. (See, e.g., *Slaughter-House Cases* (1872) 83 U.S. 36 [21 L.Ed. 394].)

 Plaintiffs note, correctly, that unlike some other constitutional provisions, the privileges and immunities clause applies only to citizens. (*Mathews v. Diaz* (1976) 426 U.S. 67, 78, fn. 12 [48 L.Ed.2d 478, 96 S.Ct. 1883].) Thus, aliens, lawful or unlawful, cannot claim benefits under the clause. But no authority suggests the clause prohibits states from ever giving resident aliens (again, lawful or unlawful) benefits they do not also give to all American citizens. The fact that the clause does not protect aliens does not logically lead to the conclusion that it also prohibits states from treating unlawful aliens more favorably than nonresident citizens. (Moreover, were plaintiffs correct in their interpretation of the clause, § 68130.5 would pass even their test. That section does not treat citizens worse than unlawful aliens. It grants the same exemption to *all* who qualify, whether they are nonresident citizens or resident unlawful aliens.)

The clause does operate in some circumstances to prevent states from treating nonresident citizens less favorably than resident citizens. In *Saenz v. Roe, supra*, 526 U.S. 489, the high court held that a statutory limitation on state welfare benefits for recently arrived resident citizens violates the clause. Contrary to plaintiffs' argument, however, the *Saenz* case does not support their position. The holding of that case was based on the federal right of interstate travel. (*Saenz v. Roe, supra*, at p. 503.) But there is no equivalent federal right for nonresidents to pay reduced in-state tuition while attending a public college or university. The high court has specifically held that states may charge nonresidents, even those who are American citizens, more for attending their public postsecondary institutions than they charge residents. (*Vlandis v. Kline* (1973) 412 U.S. 441, 452–453 [37 L.Ed.2d 63, 93 S.Ct. 2230].) Plaintiffs seize on certain language the *Saenz* court used when describing the right to travel. It described the right as protecting, among other things, "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State . . . ." (*Saenz v. Roe, supra*, at p. 500.) Plaintiffs glean from this language a holding that the clause guarantees a citizen's privilege of being treated no worse than an unlawful alien. They read far too much into this language coming from a case that does not involve unlawful aliens. Nothing in the *Saenz* case supports their expansive interpretation of the clause.

 It cannot be the case that states may never give a benefit to unlawful aliens without giving the same benefit to all American citizens. In *Plyler v. Doe* (1982) 457 U.S. 202 [72 L.Ed.2d 786, 102 S.Ct. 2382], the high court held that the equal protection clause of the Fourteenth Amendment to the United States Constitution prohibits states from denying "to undocumented school-age children the free public education that it provides to children who are citizens of the United States or legally admitted aliens." (*Plyler, supra*, at p. 205; see also *id.* at p. 230.) Thus, the high court has held that the Constitution requires states to provide a free public education to some unlawful aliens. We do not believe that the same court would also hold that the privileges and immunities clause requires states that comply with this requirement, and provide a free education to unlawful aliens, also to provide the same free education to all citizens of the entire United States.

 Congress has addressed the question of postsecondary education benefits for unlawful aliens (§ 1623), but the privileges and immunities clause does not speak to the question. Section 68130.5 does not violate that clause.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.