IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA, EX REL. ATTORNEY GENERAL MARK BRNOVICH,
*Plaintiff/Counter-Defendant/Appellant,*

*v.*

MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT BOARD,
*Defendant/Appellee,*

ABEL BADILLO AND BIBIANA VAZQUEZ,
*Intervenor-Defendants/Counter-Plaintiffs/Appellees.*

No. CV-17-0215-PR
Filed May 1, 2018

Appeal from the Superior Court in Maricopa County
The Honorable Arthur T. Anderson, Judge
No. CV2013-009093
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
242 Ariz. 325 (App. 2017)
**AFFIRMED IN PART; VACATED IN PART**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Kevin D. Ray, Section Chief Counsel, Education and Health Section, Rusty D. Crandell (argued), Kevin D. Ray, Assistant Solicitor General, Phoenix, Attorneys for State of Arizona

Mary R. O'Grady (argued), Lynne C. Adams, Eric M. Fraser, Osborn Maledon, P.A., Phoenix, Attorneys for Maricopa County Community College District Board

Eileen Dennis GilBride, Georgia A. Staton, Jones, Skelton & Hochuli, P.L.C., Phoenix, Attorneys for Amicus Curiae Pima Community College

Julia A. Gomez, Mexican American Legal Defense and Educational Fund, Los Angeles, CA; José de Jesús Rivera, Nathan J. Fidel, Haralson, Miller, Pitt, Feldman & McAnally, P.L.C., Phoenix; Daniel R. Ortega, Jr., Ortega

Law Firm, P.C., Phoenix; Noel Fidel, Law Office of Noel Fidel, Phoenix, Attorneys for Abel Badillo and Bibiana Vazquez

Steven A. Ellis, Goodwin Procter LLP, Los Angeles, CA; Laurel Kilgour, Goodwin Procter LLP, San Francisco, CA, Attorneys for Amicus Curiae Year Up, Inc.

Andrew S. Gordon, Roopali H. Desai, Coppersmith Brockelman, PLC, Phoenix; Attorneys for Amicus Curiae Year Up, Inc. and Amicus Curiae Arizona Education Association

_____

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE BRUTINEL and JUSTICES PELANDER, TIMMER, BOLICK, and GOULD and JUDGE ESPINOSA joined.[*]

CHIEF JUSTICE BALES, opinion of the Court:

¶1          We here consider whether Arizona students granted deferred removal action by the United States Department of Homeland Security ("DHS") under its Deferred Action for Childhood Arrivals ("DACA") policy are eligible for in-state college tuition. "The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). Because Congress has not identified DACA recipients as "lawfully present" for purposes of public benefits eligibility under 8 U.S.C. § 1621, and Arizona has not made in-state tuition available to all citizens and nationals regardless of residence, we hold that DACA recipients are not eligible for in-state tuition in Arizona.

**I.**

¶2          In 2012, DHS initiated the DACA program by exercising its prosecutorial discretion to defer the deportation of certain unauthorized aliens who entered the country as children. The program provided neither long-term authorization to remain in this country nor a path to citizenship,

_____

[*] Justice John R. Lopez IV has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Philip G. Espinosa, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

but it permitted qualified persons to live and work in the United States while they remained in the program. *See* Memorandum from Janet Napolitano, Sec'y, Dep't of Homeland Sec., to David V. Aguilar, Acting Comm'r, U.S. Customs & Border Patrol, Alejandro Mayorkas, Dir., U.S. Citizenship & Immigration Servs., & John Morton, Dir., U.S. Immigration & Customs Enf't (June 15, 2012).

¶3            DACA recipients must apply to DHS for employment authorization documents ("EADs"), and the Maricopa County Community College District Board ("MCCCD") began accepting those EADs as evidence of residency for students to receive in-state tuition. Federal law generally bars granting in-state tuition to students based on state residency when they are not lawfully present in the United States. *See* 8 U.S.C. § 1623(a). Similarly, Arizona law bars in-state classification of certain students lacking lawful immigration status. A.R.S. § 15-1803(B). (Arizona statutes contemplate reduced tuition for "in-state" university students, A.R.S. § 15-1802, and "resident" community college students, *id.* § 15-1802.01; we herein use "in-state tuition" to encompass both forms of reduced tuition based on residency.)

¶4            In 2013, the Arizona Attorney General filed this action seeking a determination that MCCCD's policy violates Arizona law and an injunction prohibiting MCCCD from allowing DACA recipients to obtain the in-state tuition rates. Abel Badillo and Bibiana Vazquez ("the Students")—DACA-recipient MCCCD students who receive in-state tuition—intervened. Both MCCCD and the Students filed motions for summary judgment. Without reaching the Students' constitutional arguments, the trial court granted summary judgment to MCCCD and the Students, concluding that under the relevant federal and state law, DACA recipients are "lawfully present" and therefore eligible for in-state tuition benefits.

¶5            The court of appeals reversed the trial court's ruling and remanded with instructions to enter a judgment enjoining MCCCD from granting in-state tuition to DACA recipients. Two judges agreed that "Congress has not defined DACA recipients as 'lawfully present' for purposes of eligibility for in-state tuition," and MCCCD was thus prohibited from granting in-state tuition. *State ex rel. Brnovich v. Maricopa Cty. Cmty. Coll. Dist. Bd.*, 242 Ariz. 325, 339 ¶ 46 (App. 2017). The concurring judge reached the same conclusion under state law. *Id.* at 344 ¶ 68 (Norris,

J., concurring). The court of appeals also rejected the Students' constitutional arguments based on preemption and equal protection. *Id.* at 337-39 ¶¶ 37-45.

**¶6** We granted review solely on the issue of whether DACA recipients are eligible for in-state tuition, a legal issue of statewide importance. Previously, we issued a decision order ruling that DACA recipients are not so eligible and stating that a written opinion explaining our decision would follow. This Court has jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

**¶7** This case presents an issue of statutory interpretation, which we review de novo. *State v. Jurden*, 239 Ariz. 526, 528 ¶ 7 (2016). "[T]he words of a statute are to be given their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended." *State v. Miller*, 100 Ariz. 288, 296 (1966).

**¶8** In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Pub. L. No. 104-208, 110 Stat. 3009 (1996). As relevant here, IIRIRA provides:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).

**¶9** Section 1623(a) has been interpreted as applying to in-state tuition, and the parties do not dispute that in-state tuition is subject to IIRIRA's requirements. *See Martinez v. Regents of the Univ. of Cal.*, 241 P.3d 855, 865 (Cal. 2010) (applying IIRIRA to in-state tuition and noting legislative history stating that bill language that later became § 1623 "provides that illegal aliens are not eligible for in-state tuition rates at public

institutions of higher education" (citation and internal quotation marks omitted)).

¶10 This case turns on the meaning of "lawfully present" as it appears in IIRIRA. We conclude that only those aliens designated as benefits-eligible under 8 U.S.C. § 1621(a) are "lawfully present" for purposes of IIRIRA.

¶11 "Lawfully present" is not defined in § 1623(a), but the meaning can be ascertained from the statute's context. The term "lawfully present" also appears in § 1621, which, like § 1623, governs eligibility for postsecondary education public benefits. There, Congress directly equated aliens "not lawfully present" with those otherwise "ineligible under subsection (a)." 8 U.S.C. § 1621(d). In § 1621(a), Congress provided that only certain categories of aliens are eligible for state and local public benefits: qualified aliens as defined in 8 U.S.C. § 1641; nonimmigrants under the Immigration and Nationality Act ("INA"); and aliens paroled into the United States under 8 U.S.C. § 1182(d)(5) for less than one year. Thus, those aliens who do not fall within the categories of § 1621(a) are not "lawfully present" for purposes of state and local benefits. *See* 8 U.S.C. § 1621(d).

¶12 The two statutes are the only ones that use the phrase "lawfully present" in the subchapter of Title 8 concerning eligibility for state and local public benefits, and we construe the same words with only one meaning if possible. *See Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears."); *State ex rel. Indus. Comm'n v. Pressley*, 74 Ariz. 412, 421 (1952) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.").

¶13 MCCCD argues that we should instead look to the definition of the phrase "unlawfully present" in 8 U.S.C. § 1182(a)(9)(B)(ii) because that is the only definition of "lawfully present" or "unlawfully present" in the INA. That section provides:

> For purposes of this paragraph, an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay

authorized by the Attorney General or is present in the United States without being admitted or paroled.

8 U.S.C. § 1182(a)(9)(B)(ii). MCCCD contends that because DACA recipients' stays in the United States are authorized by DHS while they are in the DACA program, they are "lawfully present" under this definition.

¶14 But this argument ignores that the INA definition of "unlawfully present" is qualified "[f]or purposes of this paragraph" only. That limiting clause is emptied of meaning if, as MCCCD contends, the definition extends to benefits eligibility under § 1623(a). Furthermore, § 1182(a)(9)(B)(ii) operates in the specific context of tolling admissibility so that an alien who is permitted to remain in the country for a period of time is not penalized for having spent that time in the country. And although this definition addresses how an alien's presence should be "deemed" after expiration of a stay, the statute suggests that these individuals would otherwise be unlawfully present during the stay period. Nothing in the statutory framework suggests that Congress intended for this definition to be applied in the benefits-eligibility context.

¶15 MCCCD's position highlights the fact that Congress and agencies use the phrase "lawfully present" as a technical term that takes on different meanings in different circumstances. In other words, an alien can be "lawfully present" for one purpose, but not another. *See, e.g.*, 8 U.S.C. § 1611(b)(2) (permitting aliens who are "lawfully present . . . as determined by the Attorney General" to receive Social Security benefits); 8 C.F.R. § 1.3(a)(4)(vi) (stating that an alien "currently in deferred action status" is "lawfully present" for purposes of Social Security benefits "only"); 45 C.F.R. § 152.2 (stating that an alien "currently in deferred action status" is "[l]awfully present" for purposes of Affordable Care Act benefits but explicitly excluding DACA recipients). Here, Congress determined in § 1621 that only certain groups of aliens are "lawfully present" for the specific purpose of receiving state and local benefits, including postsecondary education benefits governed by § 1623(a).

¶16 Because DACA recipients are not benefits-eligible under § 1621(a), we conclude they are not "lawfully present" for purposes of § 1623(a). DACA recipients are not "nonimmigrants" under the INA, nor are they aliens paroled into the United States for less than one year. 8 U.S.C. § 1621(a)(2), (3). They are also not "qualified" under 8 U.S.C. § 1641. *Id.*

§ 1621(a)(1). The term "qualified alien" means any of the following: (1) "an alien who is lawfully admitted for permanent residence"; (2) "an alien who is granted asylum"; (3) "a refugee who is admitted to the United States"; (4) "an alien who is paroled into the United States . . . for a period of at least" one year; (5) "an alien whose deportation is being withheld" on the basis that removal would threaten the alien's life or freedom; (6) "an alien who is granted conditional entry"; or (7) "an alien who is a Cuban and Haitian entrant." *Id.* § 1641(b). DACA recipients do not fall within any of these designations.

¶**17**      Finally, we turn to whether DACA recipients may receive in-state tuition consistent with § 1623(a). That statute permits states to offer in-state tuition to aliens such as DACA recipients who are not lawfully present, as long as the state makes "a citizen or national of the United States . . . eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." Arizona has not made in-state tuition available to all U.S. citizens and nationals without regard to residence, nor has it attempted to provide in-state tuition to students "not lawfully present." Indeed, the voters attempted to do just the opposite when they enacted A.R.S. § 15-1803, which provides that "a person who was not a citizen or legal resident . . . or who is without lawful immigration status is not entitled to classification as an in-state student." A.R.S. § 15-1803(B).

### III.

¶**18**      Congress has the ultimate say in immigration matters and Arizona is bound under the Supremacy Clause of the United States Constitution to follow federal law. U.S. Const. art. VI. DACA recipients are not "lawfully present" for purposes of § 1623(a), which governs in-state tuition benefits. That section allows a state to provide in-state tuition to students who are not "lawfully present" only under certain conditions, and Arizona has not met those conditions. We therefore must conclude that DACA recipients are not eligible for in-state tuition, even if we agree on the desirability of affording them access to college education as a matter of public policy.

¶**19**      For the foregoing reasons, we vacate paragraphs 12 through 35 of the court of appeals' opinion, and we remand this case to the trial court for proceedings consistent with this opinion and the portions of the court of appeals' opinion that we did not review, including the instructions to

enter a judgment enjoining MCCCD from granting in-state tuition to DACA recipients.