PER CURIAM.
The Florida Board of Bar Examiners (“Board”) has filed a petition requesting an *433 advisory opinion to provide it guidance in determining the eligibility for admission to The Florida Bar of a current applicant, who is an unauthorized immigrant, and future similarly situated applicants. The Board has presented the following question: Are undocumented immigrants eligible for admission to The Florida Bar?[1] We have jurisdiction. See art. V, § 15, Fla. Const.[2]
The Board states that in January 2008, it adopted a policy to require all applicants for admission to The Florida Bar to produce information pertaining to their citizenship or immigration status. The policy is based in part on a United States District Court decision, Godoy v. Office of Bar Admissions, No. 1:05-CV-0675-RWS, 2006 WL 2085318 (N.D.Ga. July 25, 2006).[3] Consistent with the federal district court’s opinion, the Board requires applicants who are citizens of the United States to submit a certified copy of their birth certificate, or provide a photocopy of their certificate of naturalization or certificate of citizenship. Applicants who are not citizens are required to provide a photocopy of the immigration document that demonstrates their status.
Currently, the Board is considering an applicant (“Applicant”) for admission to The Florida Bar who is an unauthorized immigrant living in the United States. Applicant graduated from an American Bar Association accredited law school and passed The Florida Bar Examination. However, he is and continues to be an unauthorized immigrant. The Board asks the Court whether Applicant and any future similarly situated applicants are eligible for admission to The Florida Bar.[4] As *434 explained below, we answer the question by holding that unauthorized immigrants are ineligible for admission to The Florida Bar.
The United States Supreme Court recently reiterated in Arizona v. United States, — U.S. -, 132 S.Ct. 2492, 2498, 188 L.Ed.2d 351 (2012), that the “Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens.” The federal government has the “constitutional power to ‘establish an (sic) uniform Rule of Naturalization’ [resting on, in part,] its inherent, power as sovereign to control and conduct relations with foreign nations.” Id. A person’s status in this country as an authorized or unauthorized alien is determined solely by federal law. That determination addresses whether the person is lawfully present in the United States. Further, Congress has enacted laws that set the terms of employment for aliens and impose civil and criminal penalties on employers who attempt to recruit or hire an unauthorized alien. See 8 U.S.C. §§ 1324-1324a (2012). Therefore, a license issued by a state cannot permit an unauthorized alien to perform work if such conduct is prohibited by federal law. “The federal power to determine immigration policy is well settled.” Arizona, 132 S.Ct. at 2498.
The United States Department of Justice argues that federal statutes prohibit this Court from issuing a law license to an unlawfully present alien, citing 8 U.S.C. § 1621 (2012). The Department of Justice also cites the Personal Responsibility and Work Opportunity Reconciliation Act of 1996. Pub.L. No. 104-193, 110 Stat. 2105 (Aug. 22, 1996). This federal law prohibits specified categories of aliens from obtaining certain state public benefits. The statute first states that aliens are not “eligible for any State ... public benefit”. unless they are “qualified alien[s]” (defined in 8 U.S.C. § 1641 (2012)), nonimmigrant aliens (defined in 8 U.S.C. § 1101(a)(15) (2012)), or aliens who are “paroled” into the United States for less than one year. See 8 U.S.C. § 1621(a) (2012). Thus, pursuant to the statute, aliens who lack lawful immigration status are ineligible for certain public benefits (unless a state takes specific action as set forth in 8 U.S.C. § 1621(d) (2012), discussed below).
Next, the statute defines the state public benefits for which these aliens are ineligible. The benefits include “any ... professional license, or commercial license” that is provided “by appropriated funds of a State.” See 8 U.S.C. § 1621(c) (2012). A State license to practice law is a professional license. As this Court is funded through appropriations, the issuance of a license to practice law therefore falls within the prohibition set out in the federal statute. Simply stated, current federal law prohibits this Court from issuing a license to practice law to an unlawful or unauthorized immigrant.
Counsel for Applicant notes that 8 U.S.C. § 1621(d) (2012) allows a state to take specific action to “override the federal barrier” and provide a state public benefit to unauthorized immigrants. Under subdivision (d), a “State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible under [8 U.S.C. § 1621(a) (2012) ].” However, the state may only do so “through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility.” 8 U.S.C. § 1621(d) (2012) (empha *435 sis added). The plain language of the statute and case law indicate that the phrase “enactment of a State law” requires a state legislature to address this appropriations-related issue and pass legislation, which the governor must either approve or permit to become the law of the State.[5] See generally Martinez v. Regents of the Univ. of Ca., 50 Cal.4th 1277, 117 Cal.Rptr.Sd 359, 241 P.3d 855, 859 (2010) (examining whether a statute passed by the California Legislature met the requirements of 8 U.S.C. § 1621(d), which permits a state to make unlawful aliens eligible for public benefits otherwise prohibited by 8 U.S.C. § 1621); Day v. Sebelius, 376 F.Supp.2d 1022 (D.Kan.2005) (plaintiffs challenging a Kansas statute that made certain state university tuition benefits available to illegal aliens, and arguing that it did not meet the federal requirements set forth in 8 U.S.C. § 1621(d), were found to lack standing); League of United Latin American Citizens v. Wilson, 997 F.Supp. 1244, 1253 (C.D.Cal.1997) (stating that 8 U.S.C. § 1621(d) provides “a description of state legislative options in the area of immigrant eligibility for state or local benefits”). In contrast to the clear language of the federal statute and case law, the amici and counsel for Applicant claim that non-legislative forms of “State law” could meet the requirements set forth in 8 U.S.C. § 1621(d) (2012). However, they have failed to present any existing State of Florida law that governs the instant situation and complies with section 1621(d). Cf. Martinez, 117 Cal.Rptr.3d 359, 241 P.3d at 867-8 (stating that for the California statute to comply with federal requirements, “the state statute must expressly state that it applies to undocumented aliens, rather than conferring a benefit generally without specifying that its beneficiaries may include undocumented aliens,” with the court ultimately holding that the California statute did not violate 8 U.S.C. § 1621 because it expressly refers to “a person without lawful immigration status” and “undocumented immigrant[s]”)[6]; see also Raider v. Hamos, 363 Ill.Dec. 641, 975 N.E.2d 667, 674-5 (Ill.App. 1 Dist.2012) (stating that a statute that confers “a benefit generally, without any indication that the [State] legislature intends to opt out of section 1621,” would not satisfy the federal statute because section 1621(d) requires a state law to convey “a positive expression of legislative intent to opt out of section 1621(a) by extending state or local benefits to unlawful aliens”). Thus, there is no current State law that meets the requirements of section 1621(d) and permits this Court to issue a law license to an unauthorized immigrant.
Next, several amici and counsel for Applicant assert that unauthorized immigrants should be admitted to Florida Bar membership based on policies announced by the executive branch of the federal government. They refer to a memoran *436 dum from Mr. John Morton, Director of United States Immigration and Customs Enforcement, which lists “individuals present in the U.S. since childhood” among the types of individuals who should not be considered priorities when deciding whom to prosecute for being illegally present in the United States. More significantly, they rely upon a new type of temporary permission to stay in the United States called “Deferred Action for Childhood Arrivals” (DACA), which was announced by the President of the United States on June 15, 2012, as a “policy directive.” Amici and counsel for Applicant argue that an individual who has been given DACA status is lawfully present in the United States. However, a grant of DACA status is temporary and does not provide a path to lawful permanent resident status or United States citizenship. In fact, the Department of Homeland Security’s website clearly states, with respect to “Consideration of Deferred Action for Childhood Arrivals Process,” that:
On June 15, 2012, the Secretary of Homeland Security announced that certain people who came to the United States as children and meet several key guidelines may request consideration of deferred action for a period of two years, subject to renewal, and would then be eligible for work authorization. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. Deferred action does not provide an individual with lawful status.
See U.S. Citizenship & Immigration Servs., “Consideration of Deferred Action for Childhood Arrivals Process,” http://www. uscis.gov/humanitarian/consideration-deferred-action-childhoodarrivals-process (updated January 18, 2013) (emphasis added); see also Saldana v. Lahm, 2013 WL 5658233, ⅜1 (D.Neb.2013) (United States District Court for Nebraska stating that DACA is a form of prosecutorial discretion, through which immigration authorities make a discretionary determination not to remove an individual from the United States during a specified period). The policy provides that people who are granted DACA status will not be a priority for the executive branch in enforcing deportation laws; the policy explicitly states that it does not provide an unauthorized immigrant with lawful status. The DACA program was recently considered by a United States District Court in Arizona Dream Act Coalition v. Brewer, 945 F.Supp.2d 1049 (D.Ariz.2013). The court stated:
On June 15, 2012, Secretary Napolita-no issued a memorandum announcing that certain young persons not lawfully present in the United States will be eligible to obtain deferred action if they meet specified criteria under the newly instituted DACA program-The Na-politano memorandum makes clear that it “confers no substantive right, immigration status or pathway to citizenship[,]” and that “[o]nly the Congress, acting through its legislative authority, can confer these rights.”
Id. at 1054. The federal district court held that:
[t]he memorandum does not have the force of law. Although the Supreme Court has recognized that federal agency regulations “with the force of law” can preempt conflicting state requirements, Wyeth [v. Levine, 555 U.S. 555, 576, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) ], federal regulations have the force of law only when they prescribe substantive rules and are promulgated through congressionally-mandated procedures such as notice-and-comment rulemaking. See River Runners for Wilderness v. Martin, 593 F.3d 1064, 1071 (9th Cir.2010) (citing United States v. Fifty-Three (53) Eclectus Parrots, 685 *437 F.2d 1131, 1136 (9th Cir.1982)). Secretary Napolitano’s memorandum does not purport to establish substantive rules (in fact, it says that it does not create substantive rights) and it was not promulgated through any formal procedure.
[[Image here]]
And to the extent Plaintiffs rely on the purposes of the DACA program, they are looking to a nonbinding policy of a federal agency, not the intent of Congress .... What is more, the Court certainly cannot impute the intentions of the DACA program to Congress when Congress itself has declined repeatedly to enact legislation that would accomplish the goals of the DACA program. See, e.g., DREAM Act of 2011, S. 952, H.R. 1842,112th Cong. (2011).[7]
Arizona Dream Act Coalition, 945 F.Supp.2d at 1060. DACA status does not have the force and effect of law. Therefore, it does not make substantive changes to federal immigration law.
In light of Arizona Dream Act Coalition and official statements by the Department of Homeland Security regarding the DACA program, the reliance by the amici and counsel for Applicant on these executive branch policies is misguided. Both the Morton memorandum and DACA status are executive branch policies addressing deportation and the exercise of prose-cutorial discretion. They are not laws passed by Congress. These policies do not provide this Court with legal authority to disregard the laws currently enacted by Congress and admit unauthorized immigrants into Florida Bar membership.[8]
Accordingly, we answer the Florida Board of Bar Examiners’ question by holding that unauthorized immigrants are ineligible for admission to The Florida Bar. Applicants are required to demonstrate that they are legally present in the United States.
It is so ordered.
POLSTON, C.J., and QUINCE, CANADY, and PERRY, JJ., concur.
LEWIS, J. concurs in result.
LABARGA, J., concurs with an opinion, in which PARIENTE, J., concurs.

. In the present case, the issue is not the admission of a particular applicant, it is a request for an advisory opinion regarding a clearly stated question. The separate issue of the current applicant's admission is not before the Court. See Fla. Bd. Bar Exam’rs Re: Question, No. SCI 1-2568 (Fla. Apr. 4, 2013) (order denying motion for admission). Thus, the arguments presented regarding the character and fitness of that applicant are not discussed in this opinion.

. The Court has previously answered questions filed by the Florida Board of Bar Examiners pursuant to the Court’s jurisdiction to regulate the admission and discipline of attorneys under article V, section 15, of the Florida Constitution (and that section’s predecessor, article V, § 23). See, e.g., Fla. Bd. Bar Exam’rs, 581 So.2d 895 (Fla.1991); In re Certified Question, 361 So.2d 424 (Fla.1978); In re Fla. Bd. Bar Exam’rs, 350 So.2d 1072 (Fla.1977); In re Question Certified by Fla. Bd. Bar Exam’rs, 265 So.2d 1 (Fla.1972); In re Fla. Bd. Bar Exam’rs, 183 So.2d 688 (Fla.1966).

. In Godoy, a permanent resident alien who had applied to the Georgia Bar sued the Georgia Office of Bar Admissions. He alleged that the Georgia Board to Determine Fitness of Bar Applicants’ practice of requiring certain immigration documentation from non-citizens and “all foreign-born applicants” violated the supremacy and equal protection clauses of the United States Constitution, as well as his substantive due process rights. 2006 WL 2085318, at *1. In response, the Georgia bar examiners stated that the request for documents was designed to allow a non-United States citizen or foreign-born applicant to demonstrate that he is lawfully in the United States and will remain in legal status through the administration of the bar exam that he wishes to take. The Georgia bar examiners asserted that its interest in obtaining such proof is constitutionally permissible and substantial, in that “compliance with all laws, including immigration laws, is a standard expected of all applicants and lawyers.” Id. at *4. The federal court found in favor of the Georgia bar examiners.

.Several amicus briefs have been filed arguing that Applicant and others in his situation should be admitted to membership in The Florida Bar. Applicant’s counsel, the amici, and the Board asked the Court to consider various arguments presented ih a case recently decided by the Supreme Court of California, In re: Sergio C. Garcia, 58 Cal.4th 440, 165 Cal.Rptr.3d 855, 315 P.3d 117 (2014). In that case, a brief filed by the United States Department of Justice set forth pertinent legal *434 authorities regarding immigration law. By order dated April 18, 2013, this Court invited supplemental briefing, addressing specific issues, from the Department of Justice, the Florida Board of Bar Examiners, and counsel for Applicant.

. A conference committee report on the bill that enacted section 1621 states that "the affirmative enactment of a law by a State legislature and signed by the Governor after the date of enactment of this Act” is required. (H.R.Rep. No. 104-725, 2d Sess., p. 383 (1996), 1996 U.S.C.C.A.N. 2649, p. 2771).

. On January 2, 2014, the California Supreme Court issued In re: Garcia, 58 Cal.4th 440, 165 Cal.Rptr.3d 855, 315 P.3d 117, which admitted an unauthorized immigrant, Mr. Garcia, to the California State Bar. The Cali-fomia Supreme Court relied in large part on a state law that became effective on January 1, 2014, which explicitly authorizes applicants for the California State Bar who are not lawfully present in the United States to obtain a law license. The court held that the California statute satisfied the requirements of 8 U.S.C. § 1621(d) and removed any obstacles to Mr. Garcia’s admission to the California Bar that may have been presented by other provisions of that federal statute.

. See also DREAM Act of 2010, H.R. 6497, S. 3962, S. 3963, 111th Cong. (2010); DREAM Act of 2007, S. 774, 110th Cong. (2007).

. During the Court's consideration of this matter, numerous public policy arguments were offered in favor of extending state public benefits to unlawful or unauthorized aliens. Arguments of this nature are properly presented to the Florida Legislature and the United States Congress. See generally Equal Access Educ. v. Merten, 305 F.Supp.2d 585, n. 32 (E.D.Va.2004).