SALTER, J.
(dissenting).
I respectfully dissent. B.R.C.M.’s “private petition” for dependency, filed on behalf of an undocumented, fifteen-year-old immigrant, warrants individualized consul- *755 eration and adjudication rather .than summary denial. B.R.C.M;’s petition seeks an adjudication that would, assist him in applying for “special immigrant juvenile” (SIJ) status under federal immigration law,[5] but that is not a basis for summarily dismissing or denying the petition.
B.R.C.M.’s petition states a legally sufficient claim. The .petition was served by email on the Department of Children and Families (DCF), which did not oppose or support the petition below.[6] The transcript of the only hearing in the trial court regarding the petition. indicates, that the .colloquy between court and counsel lasted eight minutes. No evidence was presented, and no fact-finding resulted. Following the colloquy, the trial court denied the petition, as a matter of-law and based on a prior circuit court case, In re E.G.S-H., 22 Fla. L. Weekly Supp. 693b (Fla. 11th Cir. Ct. Jan. 27, 2016). The trial court also advised that it was “waiting to see what the appellate court does.”
We should reverse the summary denial and remand the case for investigation by DCF and for an evidentiary hearing and adjudication. Alternatively, we should certify the central issue in this case to the Supreme Court of Florida on the grounds that it is of great public importance, and we should certify conflict between the majority opinion and -decisions of other district courts of appeal.[7]
The'minors seeking an-adjudication of dependency (represented by a “next friend” and attorney appearing pro bono publico) in this and other SIJ cases are children seeking protection from harm, are inside our state borders, and are entitled to have their petitions individually adjudicated.
In response to my colleagues’ differing .view of this case and this “series of cases,”[8] this opinion will: review the history of cases considering SIJ petitions by. immigrant juveniles in Florida, including the Miami-Dade circuit court’s recent shift toward summary- denials and this Court’s per curiam affirmance of such denials; respond to the argument that only the federal ■ immigration ■ authorities, not state courts, should deal with these issues; and address the importance of adjudicative findings — even if those findings only involve one of the petitioner’s parents — to each individual petitioner.
A recent opinion by the Supreme Court of New Jersey[9] has carefully analyzed,the role of. state courts regarding SIJ issues. That opinion describes , a practical procedure applicable to such cases and provides a rational template that Florida courts should.adopt. We should also certify the recurring legal issue posed by such cases to the Supreme Court of Florida based on inter-district conflict and as an issue of *756 great public importance.[10] The number of such cases, the meed for statewide. uniformity, and the federal-state, tension, suggested by my colleagues in.this and other opinions warrant certification on both of those grounds.
I. Procedural and Factual Background
B.R.C.M. was fifteen years old when he filed his sworn petition. He was assisted by a law school clinical professor and certified legal interns on behalf of the Florida International University College of Law. His petition alleged that he was born in Guatemala; that his father abandoned him at birth and never provided B.R.C.M. food, clothing, shelter, or medical care;[11] that his mother disappeared when he was four and never contacted him or provided food, clothing, .shelter, or medical care for him; that his grandmother, then 75 years of age and infirm, brought him into her home in Guatemala, but could not provide a long-term home because of her own illness and age; that he had no other family members in Guatemala who could protect him from a local gang; and that he fled Guatemala at thirteen years of age. He-alleged that he had been released by federal immigration authorities to his godmother as a “sponsor,” and that he was residing in Miami with her,
- B.R.C.M. alleged that he is a “dependent child” under three separate criteria in the statutory definition of that term in section 89.01(15), Florida Statutes (2015): he has been abandoned and neglected by each of his parents under (15)(a); he has no parent or legal custodian capable of providing supervision and care under (15)(e); and he is at substantial risk of imminent abuse, abandonment, or neglect by his parent, parents, or legal custodian under (15)(f). He sought an adjudication of dependency under each of these criteria, as well as an order determining that it is in his “best interests” not to be returned to his home country.
Upon receipt of a copy of the petition by email after it was filed in the trial court, DCF did not investigate the allegations. At the single hearing in thé case, at which no testimony or other evidence was received, the trial court denied the petition. The trial court did so on the basis of the published 2015 circuit court decision in In re E.G.S.-H., 22 Fla. L. Weekly Supp. 693b, discussed in greater detail in a later section of this opinion. The order of denial did not render any specific findings of fact or conclusions of law, and it did not specify whether it was without prejúdiee.
This appeal followed.
II. Analysis
A. , Florida Appellate Decisions, 2005-2011
Florida appellate cases reported from 2005 to 2011 were receptive to immigrant juveniles petitioning for dependency. The Fourth District reversed the denial of an adjudication of dependency in F.L.M. v. Department of Children & Families, 912 So.2d 1264 (Fla. 4th DCA 2005). The Fifth District reversed the summary dismissal of a private petition in Department of Children & Families v. K.H., 937 So.2d 807 (Fla. 5th DCA 2006), and it reversed an adjudication of denial of dependency in *757 L.T. v. Department of Children & Families, 48 So.3d 928 (Fla. 5th DCA 2010). In 2011, this Court reversed, in pertinent part, the summary denial of a private petition in In re T.J., 59 So.3d 1187 (Fla. 3d DCA 2011), relying principally on F.L.M. and L.T.
B. Miami-Dade Circuit Court, 2018
In the ease of In re M.A.S-Q. & Y.E.SQ., 22 Fla. L. Weekly Supp. 213a (Fla. 11th Cir.Ct. Oct. 22, 2013), the circuit court adjudicated two children (siblings) dependent despite earlier doubt “as to the legitimacy of these cases.” The trial judge invited and received extensive briefing by the Guardian Ad Litem Program, Regional Counsel’s Office, Americans for Immigrant Justice, Florida’s Children First, Florida Equal Justice Center, and the University of Miami School of Law Children & Youth Clinic. After reviewing the particular facts in the evidentiary record and applicable law, the circuit, court ruled that' the juveniles were dependent and entered a “best interests” order. That record included a consideration of evidence regarding conditions in the juveniles’ countries of origin and the juveniles’ likely deportation “absent the entry of an adjudicatory order.” [12]
After considering the extensive briefing, the circuit court entered a fourteen-page, single-spaced, and closely-reasoned opinion in In re M.A.S-Q. & Y.E.S-Q., addressing a series of concerns, including venue (whether a Florida dependency adjudication can be based on occurrences outside the United States), justiciability (whether juvenile immigrant positions are actual cases or controversies, rather than “merely a mechanism used to secure a ‘back door’ route to naturalization”), and how a child not in need of services can be “dependent,” For each of these issues, the court’s concern was assuaged.
The circuit "court’s assessment of the conflict between a finding of dependency and a “no services needed” stipulation, together with the court’s concern for the ability to enter custody orders and make other post-adjudication decisions regarding the SIJ petitioners, is noteworthy:
The Court also asked the parties to address how a child not in need of services can in fact be “dependent,” and ' whether the Court should exercise juris- ' diction in a case when it cannot carry out all of the responsibility assigned to it by Chapter 39; and in particular the responsibility to enter and enforce custody orders. The Court had difficulty comprehending how a child in need of “nothing”'could be “dependent” on' the Court — and I questioned whether the Court should assume jurisdiction over a case when it could not exercise the authority vested by the legislature. The parties (and participants) have assuaged the Court’s concerns.
As for the first point, our appellate courts have uniformly concluded that a child who makes “no' request for services” may nonetheless be “dependent” — as defined by Florida Statute § 39.01(15) — and that a finding to the contrary would encourage immigrant children to deplete state resources available for “other needy children.” See T.J. supra, at fn. 5, citing F.L.M., supra at 1270. This precedent confirms that “[Fjlorida Appellate Courts view immigrant children not requesting DCF services as a cost sayings to the State and n.ot something that should be held against their dependency petitioners.” See Petitioner’s Brief, p. 10. The Court *758 is bound by this precedent and, as a result, is not permitted to take into account a child’s need of services (or lack thereof) • in determining whether they are in fact “dependent.”
The Court also is persuaded that jurisdiction over, these cases is appropriate even though it will not always be able to exercise every responsibility assigned to it by Chapter 39. As the Petition'and Amicus Brief point .out, the determination of whether a child is eligible for SIJS [Special Immigrant Juvenile Status] is a joint one, “reflecting the recognition of congress that states retain primary responsibility and administrative competency to protect child welfare.” See Petitioner’s Brief, p. 12, 13, fn. 15. In this unique and limited area, federal and state authorities exercise concurrent jurisdiction, with each having distinct roles and responsibilities. This Court’s role and responsibility is to adjudicate whether the child is “dependent” under state law, and whether the facts support the entry of a “best interest order”— factual findings within this Court’s traditional purview.
There is no doubt that in the ordinary dependency case Chapter 39 charges this Court with the responsibility of ensuring that children under its jurisdiction are cared for in a. safe and secure environment. See, e.g., § 39.001(l)(a), Fla. Stat. (2013) (purpose of this chapter is “[T]o provide for the care, safety, and protection of children in an environment that fosters healthy social, emotional, intellectual, and physical development; to ensure secure and safe custody; to promote the health and well-being of all children under the state’s care;: and to prevent the occurrence of child abuse, neglect, and abandonment.”). ' The Court’s duty to carefully examine “placement” options commences upon acquiring jurisdiction over a child and remains until that jurisdiction is relinquished. In other words, the Court must assess the suitability of a child’s placement at all stages of the proceeding.
But- Congress has decided that federal immigration authorities should retain the ability to determine issues of custody and placement so long as an alien child remains in federal custody. M.A.S-Q. and Y.E.S-Q. were in federal custody at the time the Court entered its adjudicatory order. The Court therefore lacked jurisdiction to order that the children remain at [a federal Office of Refugee Resettlement Facility], and federal immigration authorities vvere free to place them with their uncharged Mother sans this Court’s knowledge or approval.
That dependent children under the Court’s jurisdiction may — in these limited circumstances — be moved without the Court’s involvement is no doubt troubling, as one of the Court’s primary responsibilities in a Chapter 39 proceeding is to ensure that the child resides in a suitable placement. On the other hand, in these unique instances a federal agency takes on that responsibility, and the Court must asspme that the child’s welfare is — and always will be — of paramount concern. Moreover, nothing in Chapter 39 obligates the Court to exercise all its authority in all cases. There are indeed circumstances where the Court is permitted to terminate supervision — and jurisdiction — immediately upon adjudication. See, e.g., § 39.521(3)(b)l, Fla. Stat (2013) (authorizing the court to place an adjudicated child in the sole custody of an uncharged parent and terminate jurisdiction).
The Court also is cognizant of, and informed by, the fact that the Legislature has undeniably recognized the importance of assisting undocumented minors who may qualify for SIJS. Florida Statute § 39.5075(4) obligates DCF — or *759 its contracted [community based care provider] — to “petition the court for an order finding that the child meets the criteria for special immigrant juvenile status” anytime the child may be eligible. § 39.5075(4), Fla. Stat. . (2005). Florida Statute § 39.5075(5), then obligates DCF — or its contracted [community based care provider] — to actually “file a petition for special immigrant juvenile status” with the appropriate federal .authorities on behalf of the “child” within sixty (60) days after the Court determines eligibility. Id. at § 39.5075(5).
The Legislature also amended Chapter 39 to allow the Court to retain jurisdiction over an immigrant child with a pending SUS petition “solely for the purpose of allowing the continued consideration of the petition and application by federal authorities,” until the earlier . of a final decision or the child’s twenty second (22nd) birthday. § 39.013(2)(d), Fla. Stat.(2013). So there can be no doubt that the Legislature contemplated — and has in fact compelled — consideration of these “private petitions.”
For these reasons the Court finds that it should not abdicate its responsibility to adjudicate these cases simply because it lacks the authority to make placement decisions for dependent alien children in federal custody. Congress, and our Legislature, charged this Court with the task of determining whether these children are “dependent” — as defined by State law, and whether applying for SIJS “is in the best interest of. the child.” § 39.5075(5), Fla. Stat. (2005). The Court will carry out that mandate notwithstanding that its authority over alien children may be, slightly cireum-scribed during their tenure in federal custody. • -
22 Fla: L. Weekly Supp.' 213a (emphasis added) (footnotes'omitted).
In F.L.M., the 2005 Fourth District casé cited by the circuit1' court in its analysis above, DCF opposed the immigrant juvenile’s petition on the grounds that such cases were “not a propér use of Florida’s laws, courts, and résourcés devoted to helping truly-dependent, truly-needy children.” 912 So.2d at 1269: The Fourth District, however, flatly rejected that argument: “This argument is unavailing, because if a child qualifies for a declaration of dependency under our statutes, the child’s motivation to obtain legal residency status from the United States Attorney General is irrelevant,” Id.
C. Miami-Dade Circuit Court, 2015
In January .2015, the Miami-Dade circuit court considered a private petition brought by a young immigrant, E.G.S.-H. E.G.S.-H. was living with his father in Miami after fleeing a Central American country,[13] and he alleged that he had been abandoned by his mother shortly after birth. The court denied the petition without prejudice[14] because it concluded that the alleged abuse, abandonment, or neglect was too remote in time (“long stale”), and there was no allegation that the child faced any imminent or continuing risk of harm. The court found that an allegation that ■ E.G.S.-H. had- been-threatened by gangs in his home- country “will not support a dependency adjudication unless perhaps a parent’s failure to protect a child from such abuse rises to the level of ‘neglect.’ ” In re E.G.S.-H., 22 Fla. L. Weekly Supp. 693b.
*760 Importantly, the decision, in In re E.G.S.-H. considered dependency only under section 39.01(15)(a) (abandonment, abuse, or neglect by the child’s parent, parents, or legal custodian). The juvenile immigrant was residing with his uncharged father, and the allegations of abandonment, abuse, and neglect as to the mother were found to be too remote in time. Petitioner and counsel or the court may not have focused on the significance of a single-parent finding for SIJ purposes (see detailed discussion infra Section III).
In the present case, B.R.C.M: petitioned for an adjudication of dependency as1 to each parent and under three criteria provided by section 39.01(15), including sub-paragraphs (e) and (f) as well as (a). And B.R.C.M. ⅛ godmother is not a “legal custodian” under the definition applicable to section 39.01(15)(e).[15] In short, a summary denial of all of B.R.C.M.’s allegations by the circuit court on the basis of In re E.G.S.-H., and without other analysis, authorities, or an evidentiary hearing, was unwarranted.
D. In re Y.V., April 2015
In April 2015, the First District considered a circuit court order dismissing a private petition for dependency filed on behalf of a juvenile immigrant from Honduras. “The trial court dismissed the petition because the events giving rise to the grounds for dependency occurred outside the State of Florida and the court viewed the petition as an attempt to circumvent federal immigration laws.” In re Y.V., 160 So.3d 576, 577 (Fla. 1st DCA 2015).
The First District reversed the dismissal order and remanded the case for further proceedings, concluding:
In sum, neither the geographical setting of the events alleged in the petition ■ nor the motivation for the petition pre- , eludes Y.V. from being adjudicated dependent under the laws of the State of Florida. The proper question before the circuit court at this stage of the case under review was whether the petition establishes a prima facie case of dependency under the Florida statutes. Because we conclude that it does, we reverse the dismissal and remand for further proceedings.
Id. at 581.
E. This Court, July 2015
In July 2015, this Court issued two opinions addressing private dependency petitions filed on behalf of immigrant juveniles. In In re K.B.L.V., 176 So.3d 297 (Fla. 3d DCA 2015), a seventeen-year-old from Honduras alleged that he had been abandoned by his father at birth. He reunited with his mother in 2013 in Florida and was residing with her. He sought an adjudication of dependency based on abandonment'by only the father and a “best interests” order. His father consented to the petition, and DCF did not oppose it. Following a seven-minute colloquy with counsel, the trial court dismissed the petition on the grounds detailed in In re E.G.S.-H. — the, alleged abandonment was too remote in .time for the court to make a dependency adjudication.
The trial court did not hear evidence, enter findings regarding each parent, or ihdicate that the dismissal was without prejudice. On appeal, DCF again took no position. This Court affirmed the trial . court’s summary dismissal.
*761 A specially concurring opinion in In re K.B.L.V. went further, observing that “in all probability, these cases do not reach the threshold of a case or controversy, for consideration in this court or the court below,” and that “our decisions in, these cases are nothing but advisory opinions.” 176 So.3d at 300 (Shepherd, J., specially concurring). The specially concurring opinion introduced an additional objection to such petitions:
Despite the long settled understanding in our federal system that “[policies pertaining to the entry of aliens and their right to remain here are ... entrusted exclusively to Congress,” Galvan v. Press, 347 U.S. 522, 531/74 S.Ct. 737, 98 L.Ed. 911 (1954), the United States Congress, for reasons of its own, has decreed that our stamp of approval is a sine qua non for consideration by the United States Citizenship and Immigration Services of a child’s request for SIJS [sic] status and permanent residency. It is as if we are customs agents, although the federal government will make the final decision. I admit to ' an’erosion of roles between state and federal responsibilities in our federal system in recent times. However, we are not yet colonies or territories of the United States government. We correctly decline to subordinate ourselves to the whim of the United States Congress in this case. The purpose of the dependency laws of this state is to protect and serve children and families in need, not those with a different agenda.3
[[Image here]]
3 Section 39.001 of the Florida. Statutes provides a lengthy list of purposes, the first’ of ’which is “[t]o provide for the care, safety, and protection of children.” . Assistance to the-United States Citizenship and Immigration Services -is not one of them. But see, § 39.5075, Fla. Stat. (2014).
Id. at 301 (alterations in original).
The same day this Court issued the opinion in In re K.B.L.V., the Court affirmed the denial of another SIJ petition in In re B.Y.G.M., 176 So.3d 290 (Fla. 3d DCA 2015).[16] In that case, a seventeen-year-old "girl alleged that she fled El Salvador in 2014 after threats to hér life and harassment from local gang members; She alleged that she was abandoned by her father when she was eight months old and had not seen or been contacted by him since. He never provided financial or other support.
When she was three years old, B.Y.G.M.’s mother left "for the United States. . B.Y.G.M. was reunited with her mother in Homestead, Florida, and was living with her mother when she filed the petition. She sought a finding of dependency as to the father and a “best interests” order. The trial court heard testimony from B.Y.G.M. and her mother, and denied the petition on the grounds that (a) the, abandonment was too remote in time and (b) her mother is capable of providing B.Y.G.M. supervision and care. B.Y.G.M. sought no services from DCF, and DCF did not investigate, or take a position regarding, the allegations in the petition.
In B.Y.G.M.’s appeal, DCF again took no position. This Court affirmed the trial court’s findings and the denial of the petition. Once again, a concurring opinion addressed DCF’s failure or refusal to take a position in these cases (and to alert the Court “to other state authority germane to our decision”)[17] and expressed the' viéw, *762 with regard to SIJ petitioners, that “[tjhere is no reason for this court to succumb to those who would misuse our law.” Id. at 296 (Shepherd, J., concurring).
Although these two panel decisions of our Court are binding on the panel in this case as to issues of law, petitions for dependency turn on their particular facts and the totality of circumstances. See In re M.F., 770 So.2d 1189 (Fla.2000). Determinations of abandonment are fact-specific and are not reweighed if based on testimony and evidence at trial. J.C.J. v. Heart of Adoptions, Inc., 989 So.2d 32, 35 (Fla. 2d DCA 2008) (citing In re Adoption of Baby E.A.W., 658 So.2d 961, 966-67 (Fla.1995)). The temporal remoteness of abandonment, and long-term lack of contact by a parent, is not always a bar to such a claim. See, e.g.; V.C.B. v. Shakir, 145 So.3d 967 (Fla. 4th DCA 2014) (concluding the child was abandoned based on four years without parental contact; five years without financial support); M.A. v. Dep’t of Children & Families, 814 So.2d 1244 (Fla. 5th DCA 2002) (affirming the trial court’s finding of abandonment based on five years with only marginal efforts to maintain contact, while making no provisions for the children’s welfare). Neglect and abuse are similarly fact-intensive determinations.
The facts relied upon by the trial court and this Court in In re KB.L.V. and In re B.Y.G.M. are markedly different than those at issue in B.R.C.M.’s case. The majority’s opinion in the present- case concludes- that a child abandoned by both parents and presently living with a godmother has not been abandoned for purr poses of Chapter 39. But as the First District held in In re Y.V., such allegations present prima facie grounds for dependency under sections 39.01(15)(a) and (e), and “the only reason [the petitioner] is not at imminent risk is because a responsible adult is caring for him on a voluntary basis.” 160 So.3d at 579. Nevertheless, the majority approves the trial court’s summary denial of B.R.C.M.’s petition without an evidentiary hearing or findings.
F. Citation PCAs
A series of five summary adjudications by the Miami-Dade circuit court followed, with per curiam affirmances (PCAs) by this Court citing the July 2015 decisions in In re K.B.L.V. and In re B.Y.G.M. Four of these are part of. an introductory string cite in the majority opinion in this case, but in my view each of the underlying cases should be considered on its own unique, sworn allegations and an evaluation by DCF, and should culminate in specific adjudicative findings, rather than a summary denial.
M.J.M.L. v. Department of Children & Family Services, 170 So.3d 931 (Fla. 3d DCA 2015), affirmed the summary denial of a petition filed on behalf of a thirteen-year-old immigrant juvenile from Honduras, The written order denying M.J.M.L.’s petition stated only that it was denied “based on the'fact that there is a parent with the child residing in Dade County.”[18]
Similarly, In re J.A.T.E., 170 So.3d 931 (Fla. 3d DCA 2015), the private petition was summarily denied without elaboration or findings, and with a citation to In re *763 E.G.S.-H. On appeal, DCF filed a “Notice of the Department’s Position,” stating that the appeal concerned a private dependency petition, and “The Department did not assert its party status, did not appear as a litigating party in the trial court, and did not take a position in the underlying proceedings on. the issue of whether [J.A.T.E.] proved the statutory requirements for dependency.”
The third citation PCA issued the same day as those in M.J.M.L. and In re J.A.T.E. was in D.A.O.L. v. Department of Children & Families, 170 So.3d 927 (Fla. 3d DCA 2015). The written order reflects a .denial without prejudice based on S.H. v. Department of Children & Families, 880 So.2d 1279 (Fla. 4th DCA 2004),[19] and In re M.A.S-Q. & Y.E.S-Q., 22 Fla. L. Weekly Supp, 213a. DCF filed a notice of taking no position in this Court in D.A.O.L.’s subsequent appeal.
In a fourth citation PCA, In re F.J.G.M., — So.3d -, 40 Fla. L. Weekly D1908 (Fla. 3d DCA Aug. 12, 2015), this Court affirmed a summary dismissal with citations to In re B.Y.G.M. and In re K.B.L.V.[20] The trial court order denied the petition on the basis of the circuit court’s opinion in In re E.G.S-H. and the opinions of this Court in In re B.Y.G.M. and In re K.B.L.V.
Finally, in In re D.A.M., No. 3D15-1154, 185 So.3d 535, 2015 WL 6499396 (Fla. 3d DCA Oct. 28, 2015), the trial court summarily denied a petition filed by two immigrant minors, citing the circuit court order in In re E.G.S.-H. as the legal basis for the ruling. This Court entered an affir-manee citing In re B.Y.G.M. and In re K.B.L.V.
In each of these five PCAs, the trial court had summarily denied the immigrant juvenile’s petition without an evidentiary hearing and -without issuing any findings of fact.
G. Summary Regarding the 2015 Dispositions of SIJ Petitions
From the1 elaboration of rulings in 2015 in this district (see supra Sections II.E. and ILF.), it is apparent that (a) DCF has previously treated SIJ petitions as inappropriate for pre-hearing investigation or legal analysis at a hearing, and (b) the circuit court and this Court have concluded that private petitions by immigrant juveniles are generally appropriate for summary'denial, despite the more deliberate consideration previously afforded the SIJ petitioners' in 2013' in In re M.A.S-Q. & Y.E.S-Q. and in prior opinions by the district courts of appeal.
This circumstance is exacerbated by the rules of procedure requiring the circuit court to expedite íiearings.and dispositions on dependency petitions,[21] and requiring this’ Court to expedite the appeals in such cases.[22] The short time between our citation PCAs and the next case in the trial court may seem to endorse facial review and summary denial of subsequent petitions by immigrant juveniles.
But although the particular petitions ruled upon by the circuit court and this Court, in In re B.Y.G.M. and In re K.B.L.V. may have warranted denial, those trial and appellate rulings did not, and *764 should not be read to, justify.a blind eye by DCF and to invite categorical, summary denial and per curiam affirmances in all petitions by immigrant juveniles in this 'district. This'trend seems to reflect a belief or conclusion that the petitioners are only seeking immigration relief, not state assistance following abuse, abandonment, or neglect, such that the immigrant petitioners áre not entitled to adjudicative findings under .Chapter 39, Florida Statutes. . . ,■
Despite the distinguishing facts in B.R.C.M.’s petition and the fact-intensive character of. dependency determinations, this Court’s opinions in In re B.Y.G.M. and In re K.B.L.V. apparently are now considered by some to support a threshold, categorical rejection of immigrant juveniles’ petitions.. The resulting circuit court denial orders, lack any findings amenable to meaningful appellate review. And, viewed cumulatively, the recent spate of summary denial orders in the trial court and per curiam affirmances in this Court suggest a categorical rejection of such petitions rather than the usual individualized évidentiary hearings and written findings of fact.
.As already noted, there is also a view that the federal government and its immigration authorities have unfairly thrust these petitions on DCF and our state courts by creating the SIJ process — a view that SIJ petitions are in effect an unfunded mandate tó a DCF that already works hard 'but strains to care for our state’s “truly” abused, abandoned, and neglected children. To address these views and provide a practical'way forward, we can benefit from a recent decision from another state.
'' III. Individualized Consideration and Findings: H.S.P. v. J.K
In the case of H.S.P. v. J.K., 223 N.J. 196, 121 A.3d 849 (2015), the Supreme Court of New Jersey addressed two separate petitions filed on behalf of immigrant juveniles. In the first, a petition was filed by an uncle (H.S.P.) on behalf of his seventeen-year-old nephew; M.S. M.S., a citizen of India lacking’immigration documentation, sought a declaration in the state “Family Part” that he had been abandoned and neglected by each of his parents. In New Jersey, the “Family Part” is the trial court division corresponding to the Juvenile Division of the Miami-Dade circuit court.
The Family Part conducted a hearing and declined to enter the predicate SIJ findings because it concluded that neither of M.S.’s parents had abandoned or neglected M.S. The Family Part “did not reach the question of whether it would be in [M.S.’s] best interests to remain in the United States or be returned to India.” Id. at 853. The Appellate Division affirmed the Family Part’s conclusion that M.S. had not been abandoned or neglected by his mother, reversed the conclusion as to abandonment by his father, and affirmed the Family Part’s refusal to enter a “best interests” order.
In the second petition reviewed by the Supreme Court of New Jersey in the same opinion, a mother filed on behalf of her daughters, J.S.G: (then fifteen years old) and K.S.G. (then twelve years old). All were citizens of El Salvador.- Approximately six years before-the petition was filed, the mother left for the United States, leaving the children in the care of their father and grandmother. The petition alleged that the father was murdered by members of a gang in El.Salvador eleven months before the petition was filed. At the age of twelve, the older daughter was raped by á member of a gang, and she later attempted suicide. The girls entered the United States via Mexico in 2013, were transferred by immigration authorities to Chicago, and ultimately were released by *765 the Office of Refugee Resettlement to the care of their mother in Elizabeth, New Jersey.
The Family Part found that it was not in the juveniles’ best interests to return to El Salvador, but also that there was “no basis under state law to suggest that [the mother] had abused, neglected, or abandoned the children.” Id. at 855. This order was allowed to be directly certified to the Supreme Court of New Jersey and the case was consolidated there with the first of the two immigrant juvenile cases (involving the juvenile from India, M.S.).
The Supreme Court of New Jersey received amicus briefs from the American Friends Service Committee, Kids in Need of Defense, the Young Center for Immigrant Children’s Rights, and a number of New Jersey law school professors' specializing in family and immigration law. The Supreme Court of New Jersey concurred with the New York courts that SIJ petitions represent “a unique hybrid procedure that directs the collaboration of state and federal systems,” quoting In re Marisol N.H., 115 A.D.3d 185, 979 N.Y.S.2d 643, 645 (2014); and with the California courts that “[t]he SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child’s best interests,” quoting In re Y.M., 207 Cal.App.4th 892, 144 Cal.Rptr.3d 54, 68 (2012). H.S.P., 121 A.3d at 857, 859.
The Supreme Court of New Jersey also focused on the language of the federal'SIJ statute regarding adjudicative findings as to “1 or both” parents. Although the interpretation of the statute itself “is exclusively the province of the.federal government,” the Court recognized that findings as to each of a petitioning juvenile’s parents could be important to the federal authorities considering the juvenile’s later 1-360. SIJ petition. , Id. at 860.[23] The Court provided clear guidance to New Jersey trial courts, relating to such petitions:
In an effort to ensure that factual findings issued by New'Jersey courts provide USCIS with the necessary information to determine whether a given alien satisfies the eligibility criteria for' SIJ status, we instruct courts of1 the Family Part to maM separate findings as to abuse, neglect, and abandonment with regard to both legal parents of an alien juvenile! For ekample, the Family Part should first determiné whether reunification with one of the child’s parents is not viable dué to abuse, neglect, or abandonment. Regardless of the outcome of that analysis, the court should next conduct the same analysis with regard to the child’s other legal parent. By requiring the Family Part to make independent findings as to both of the juvenile’s parents, we ensure that US-CIS will have sufficient information to apply 8 U.S.C.A. § 1101(a)(J)(27) as it sees fit token a juvenile subsequently submits the Family Part’s order to US-CIS in support of an application for SIJ status. That is the role Congress envisioned for the juvenile courts of the fifty states, and that is the process that should be followed by the F'amily Part.
Id, (emphasis added)....
The Supreme Court of New Jersey reversed the Appellate Division’s judgment and, remanded both petitions to the Family Part for furtjher hearings and findings in *766 accordance with the Supreme Court’s opinion. '
■ IV. • Conclusion
That B.R.C.M.’s petition is unusual in comparison to the petitions filed on a daily basis by DCF is without question. That B.R.C.M.’s petition floats on an undercurrent of polarized views regarding national immigration policy[24] is also without question. But I submit that DCF should evaluate the allegations of each petition, and Florida circuit courts should enter findings of fact and conclusions of law that address each juvenile petitioner’s individual claims. If DCF alleges, and the. circuit court concludes, that the petition fails to state a prima facie case, the petitioner should be allowed to amend, as the rules provide. If the petition states a prima facie case, the petitioner should be permitted to introduce evidence in support of his or her claims, and the court should enter specific adjudicative findings responsive to the issues presented by the petition and the eviden-tiary record. When such relief is sought, the circuit court should determine (and if that determination is appealed, this Court should review) the dependency claims separately as to each of the petitioner’s parents.
In this way, our dependency courts can consider what Congress has invited — not ordered — them to consider (because of the state dependency courts’ superior expertise), and yet stay out of final immigration rulings. And more importantly, immigrant children may obtain what other children in Florida routinely obtain in dependency cases — an investigation and individualized adjudication of their exigent circumstances. The circuit court’s 2013 order in In re M.A.S-Q. & Y.E.S-Q. afforded careful, individualized adjudication of the immigrant juveniles’ allegations. The summary denial of B.R.C.M.’s petition in the present case, in contrast, did not.
I would also certify our opinion in this case as being in express and direct conflict with the decisions of the First District in In re Y.V., 160 So.3d 576 (Fla. 1st DCA 2015); the Fourth District in F.L.M. v. Department of Children & Families, 912 So.2d 1264 (Fla. 4th DCA 2005); and the Fifth District in Department of Children & Families v. K.H., 937 So.2d 807 (Fla. 5th DCA 2006), and L.T., v. Department of Children & Families, 48 So.3d 928 (Fla. 5th DCA 2010).
Finally, I would certify the following to the Supreme Court of Florida as a question of great public importance:
REGARDING PETITIONS FOR DEPENDENCY- FILED ON BEHALF OF IMMIGRANT JUVENILES UNDER CHAPTER 39, FLORIDA STATUTES, IS SUMMARY DENIAL OF SUCH PETITIONS APPROPRIATE IF THE PETITIONER IS LIVING IN FLORIDA WITH A FAMILY MEMBER OR VOLUNTEER APPROVED . BY THE OFFICE OF REFUGEE RESETTLEMENT?
*767 B.R.C.M. may be “perceived to be a defector from poverty,”[25] but that should not exclude him from adjudication as a dependent juvenile under Chapter 39 if the evidence supports such findings. The order below should be reversed and remanded for further proceedings.
For these reasons, I respectfully dissent;

. See 8 U.S.C. § 1101(a)(27)(J); see also § 39.5075, Fla. Stat. (2015).

. At oral argument, and as quoted in the majority 'opinion, counsel for DCF reported that DCF will follow the dependency statutes when a petitioning juvenile immigrant is “truly” abandoned, abused, or neglected. In my view, DCF cannot assess whether a petitioning juvenile immigrant has been “truly” abandoned, abused, or neglected without investigation, and should not decline to support or oppose the claims in a sworn SIJ petition, as occurred in B.R.C.M.’s case.'

. See, e.g,, In re Y.V., 160 So.3d 576, 580 (Fla. 1st DCA 2015) (concluding that a petition on behalf of immigrant minor should not be rejected when motivated by a desire to obtain special immigrant juvenile status; "In fact, this desire is supported by the federal and state statutory system when it serves the greater purpose of protecting the child from harm.”) (reversing and remanding case for further proceedings).

. Majority op. at 750.

. H.S.P. v. J.K., 223 N.J. 196, 121 A.3d 849 (2015).

. Fla. R.App. P. 9.030(a)(2)(A)(iv) and (v), respectively. This case could also be identified as a "pipeline” case for consideration by the Supreme Court of Florida in another SIJ case, O..C.L. v. Department of Children & Families, Case No. SC15-1570, 2015 WL 6854614 (Fla. Oct. 30, 2015) (oral argument set for Feb, 2, 2016).

. B.R.C.M. alleged that he met his father for the.first time after B.R.C.M. arrived in Miami. They have spoken occasionally, but his father has not provided money or support.

. The trial court correctly recognized in In re M.A.S-Q. & Y.E.S-Q. that an- adjudication of dependency and a'"best interests” order do not guarantee SIJ status or naturalization. In footnote 7 of In re M.A.S-Q. & Y.E.S-Q., the circuit court noted that the' juvenile "also must satisfy other federally imposed eligibility criteria.” 22 Fla. L. Weekly Supp. 213a n. 7.

. The reported opinion has redacted a number of specific facts to protect the juvenile’s privacy.

. In re E.G.S.-H., 22 Fla. L. Weekly Supp. 693b. So far as the opinion reflects, DCF did not investigate, appear, or take a position in the trial court. The public record does not indicate that the petition was amended or that an appeal was taken.

. A legal custodian is a person appointed by a court and vested with "the right to have physical custody of the child and the right and duty to protect, nurture, guide, and discipline the child and to provide him or her with food, shelter, education, and ordinary medical, dental, psychiatric, and psychological care.” § 39.01(34), Fla. Stat. (2015).

. K.B.L.V. and B.Y.G.M. are seeking review by the Supreme Court of Florida. K.B.L.V. v. Fla. Dep't of Children & Families, No. SC 15-2026 (Fla. filed Nov. 2, 2015); In re B.Y.G.M., No. SC15-2025 (Fla. filed Nov. 2, 2015).

. ■ However, the New Jersey case cited by the *762 specially concurring opinion regarding the rejection of an immigrant juvenile’s petition, H.S.P. v. J.K., 435 N.J.Super. 147, 87 A.3d 255 (2014), was later reversed by the Supreme Court of New Jersey in an opinion discussed in greater detail below, H.S.P. v. J.K., 121 A.3d 849. That Court remanded the case to the trial court for a new hearing and detailed findings. See supra Section III.

. The order indicates reliance on a circuit court order from another case. From the transcript and chronology, the intended reference was to the circuit court opinion in In re E.G.S.-H.

.S.H. involved a petition by a sixteen-year-old immigrant from Guatemala establishing only "that S.H.'s parents sent him to live with his uncle” to obtain work in the United States and support his family in Guatemala. 880 So.2d at 1280. “These facts alone would not as a matter of law constitute abandonment.” Id. at 1280-81.

. The citation PCA in In re F.J.G.M. is the subject of a pending motion for rehearing and rehearing en banc,

. Fla. R. Jud. Admin. 2.250(a)(1)(F).

. Fla. R.App, E. 9.146(h).

. The Court cited an article addressing this point, Meghan Johnson & Kele Stewart, Unequal Access to Special Immigrant Juvenile Status: State Court Adjudication of One-Parent Cases, 16 A.B.A. Child. Rts. Litig., no. 4, -at 8 ; (2014), http://www.americanbar.org/ conten1/dam/aba/publications/litigation_ . committees/childrights/summer2014.
authcheckdam.pdf. H.S.P, 121 A.3d at 858-59.

., "While this court is sympathetic to the plight of alien minors seeking the opportunity of a better life in the United States, the role of the trial judge is not to set immigration policy or to decide whether, as a humanitarian gesture, any particular alien minor- should be permitted to stay in the United States." O.I.C.L, v. Dep’t of Children & Families, 169 So.3d 1244, 1250 (Fla. 4th DCA 2015), review granted, No. SC15-1570, 2015 WL 6854614 (Fla. Oct. 30, 2015) (oral argument set for Feb. 2, 2016).'
"Here we have another unopposed petition to have a minor child who has illegally crossed the border of the United States declared dependent on the court for the sole purpose of helping the child obtain legal residency status in the United States.” In re K.B.L.V., 176 So.3d at 300 (Shepherd, J., specially concurring). ■' ■

. Fla. Bd. of Bar Exam’rs re Question as to Whether Undocumented Immigrants are Eligible for Admission to The Fla. Bar, 134 So.3d 432, 444 (Fla.2014) (Labarga, J., concurring).